VINCENT A. CIULLA, Individually and as Guardian ad Litem of VINCENT A. CIULLA, JR., an Infant, Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28247.)

Court of Claims, March 9, 1948.

*Joseph Dimino* and *Solomon R. Agar* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Howard F. Danihy* of counsel), for defendant.

GREENBERG, J.   An order was heretofore made herein directing the State of New York to submit to an examination before trial, by certain employees including one designated as James E. Ingraham.   It now develops that claimants in reality seek to examine a James H. England, in the employ of the New York City housing authority.   The Attorney-General has accordingly moved to modify the original order to strike out that portion which directs the examination of James E. Ingraham (correctly known as James H. England) as an agent or employee of the State.   In opposition thereto, claimants' counsel urges that the New York City housing authority is a State agency, organized under the Public Housing Law (Cons. Laws, ch. 44-A), and that therefore claimant is entitled to the examination before trial.

Section 2 of the Public Housing Law, in declaring the policy of the State with regard to housing, states that the conditions there described " require the creation of the agencies, instrumentalities and corporations hereinafter prescribed, which are declared to be agencies and instrumentalities of the state for the purpose of attaining the ends herein recited   *   *   *.''   Since public housing authorities are among the agencies created or continued by the Public Housing Law, the question arises whether the characterization of such authorities as " agencies and instrumentalities of the state '' creates out of such authorities State agents in the sense that they may be viewed as alter egos of the State or that their employees may for any purpose be considered employees of the State.   Consideration of the purposes, powers and functions of housing authorities, of the administrative practices that have been established for their

operation and of relevant constitutional and statutory authority, leads to the conclusion that the answer must be in the negative.

A housing authority is a public corporation (*Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333 [1936]; N. Y. Const., art. XVIII, § 2; Public Housing Law, § 3, subd. 2). The very name " authority " given to this type of public corporation imparts a distinct historical connotation of separateness and juridical distinction from the State and from the municipal corporations of the State (Tretter, Legal Foundations of Housing in New York: The Constitution and the Occupancy Tax Plan [1938], 16 N. Y. U. L. Q. Rev. 83, 84). As one analyst has commented, " The method employed by the New York legislature [for a program of low rent housing] has been the creation of housing authorities which are corporate entities, separate and distinct from the state itself and from the municipal corporations of the state * * *." (Foley, Low-Rent Housing and State Financing [1937], 85 U. of Pa. L. Rev. 239, 253.)

The New York City housing authority was created in 1934 pursuant to enabling provisions then contained in the Municipal Housing Authorities Law (L. 1934, ch. 4), the predecessor of the present Public Housing Law. Its members were appointed, as they still are, by the Mayor, and they were, and still are, removable by him. The primary purpose for its existence was the alleviation of the distress caused by adverse housing conditions in the city of New York (*Matter of New York City Housing Authority* v. *Muller, supra*).

Specifically, the authority erects housing projects for families of low income. Capital funds for these projects are obtained by the authority from private bankers, from the Federal Government, from the State or from the use of city credit, depending on the type of project involved. To bring the rents down to a level within the reach of families for whom the projects are intended, it is usually necessary that the projects receive governmental aid in the form of a subsidy. This aid may come from the Federal Government, from the State or from the city, depending again upon the type of project. To arrange for financial assistance, the authority enters into a formal contract with the appropriate government, Federal, State or city, dealing with such government in its own name and on its own behalf. In contracting with the State or with the city, the authority acts as a principal both in form and in substance. Were the authority a mere agent, a formal contract would hardly be necessary. Indeed, it would be an anomaly. If, for example, the city wishes to build a firehouse, it makes no con-

tract with its fire department; it merely appropriates funds for that purpose and lays down laws or regulations to govern the use of the appropriation. But neither the city nor the State has appropriated funds to the New York City housing authority; instead, they have dealt with it on a contractual basis at arm's length, as they would deal with any other independent corporation.

Reference to specific provisions of the Public Housing Law reveals a consistent, deliberate scheme to maintain intact the underlying concept of housing authorities as independent corporations. Those provisions relating to housing authority personnel seem most clearly to manifest this intention. It has been noted that the members of a housing authority are appointed by the mayor of the municipality (§ 30). The Public Housing Law provides that not more than one member of a housing authority may be an official of the municipality (§ 30), which indicates quite clearly that members of an authority are not ipso-facto city officers. The conclusion seems, then, that the members are neither State officers nor city officers, but rather officers of a separate entity — the authority itself. As to other personnel of housing authorities, the Public Housing Law provides that the authority shall directly engage its own personnel and determine their qualifications (§ 32). Its employees come under the jurisdiction of the municipal civil service commission, and not of the State Civil Service Commission (§ 32). Municipal employees are eligible for transfer, without examination, to housing authorities (§ 33). And it may be noted that employees of the New York City housing authority are members of the New York City employees' retirement system and not of the State retirement system (Administrative Code of City of New York, § B3-1.0, subd. 3, par. b).

Other provisions of law which offer evidence as to the juridical independence of housing authorities may be alluded to briefly. The territorial jurisdiction of such an authority is limited to the municipality in which it is established (Public Housing Law, § 31). Among the enumeration of general powers granted to a housing authority by section 37 of the Public Housing Law may be particularly noted the power to contract, as an independent agent, with the Federal Government and with the State or city governments; to own real and personal property in its own name; to sue and be sued; to have a seal; and to have perpetual succession. An authority may undertake projects independent of financial aid from any branch of government (§ 39). Neither the State nor its municipalities are liable on

the bonds or other obligations issued by an authority (§ 51). Administrative expenses of an authority may not be paid from the funds of a State-aided housing project (§ 96). The State and its municipalities are authorized to make contracts with an authority for financial aid, and in so doing to insert provisions and limitations appropriate to parties dealing with each other at arm's length (art. IV, V). An authority may condemn real property in its own name (§ 125). Plans and projects of an authority are subject to approval by the municipality (§ 150). Subject only to the terms of its contract with the lending agency (city, State or Federal), an authority has exclusive power to fix rents and select tenants for its projects (§§ 154, 156). Claims against an authority are governed by special provisions which apply neither to the State nor to any municipality (§ 157). An authority reports to State officers and bodies (§§ 14, 38; Public Authorities Law, § 1500), but its accounts are subject to the supervision of the municipal comptroller (N. Y. Const., art. X, § 5).

Administrative practice of the New York City housing authority has always been consonant with the concept of separateness. The salaries of authority employees are not included in the expense budgets of either the State or the City of New York; contracts of the authority are made in its own name and without the approval or supervision of the State or the city, except, of course, in those instances where the State or city is the other party to the contract; the authority has its own funds which it keeps in its own name in its own accounts; payments are made by the authority on its own checks without vouchers, warrants, or signature from any State or city official; the construction, operation, and management of its housing projects are in no way subjected to review by either State or city officials, except again where the State or the city is supplying financial aid to the project.

An agency constituted and functioning in the manner thus described can hardly be viewed as an agent either of the State or of a municipality. This is not to say that a housing authority may not be considered an agency of the State in the sense that it performs a State purpose. Nor does it preclude, in appropriate situations, the view that a housing authority may be considered an agency of the municipality in that it serves a municipal purpose and is to some extent responsive to municipal policy. In fact, section 51 of the Public Housing Law expressly recognizes that an authority may act as an " instrumentality " of a municipality (see, also, 1943 Atty. Gen. 232, 233, in which it

is stated, "the Legislature intended housing authorities to be agencies of the municipalities in which they were established"). There is a distinct difference in legal connotation between words like "agency" and "instrumentality" on the one hand and the word "agent" on the other. The distinction is well elucidated in *Pantess* v. *Saratoga Springs Authority* (255 App. Div. 426, 427–428 [1938]) as follows:

"There are activities which are governmental in their nature which are carried on directly by the State, although through an agency employed for that purpose; and there are still others for the carrying out of which the State has delegated to an agency the necessary powers to that end. * * *

"Where the State assumes to act directly in the carrying out of its governmental function, even though it create and use a corporation for that purpose, it assumes responsibility for the conduct of its agent. Thus the State may choose to create and maintain a State system of parks, and thereby subject itself to liability for the negligence of its officers and employees (Court of Claims Act, § 12-a; *Maltby* v. *County of Westchester*, 267 N. Y. 375, 379); or, with like liability, it may provide for the imprisonment of young delinquents and commit their custody to an authorized institution for the purpose (*Paige* v. *State of New York*, 269 N. Y. 352). But, when the State *delegates* the governmental power for the performance of a State function, the agency exercises its independent authority as delegated, as does a city, and its responsibility for its acts must be determined by the general law which has to do with that class of agent and corporate activity, apart from liability on the part of the State. That is the case when the State delegates its State function of education to a school board, its public health function to a local board of health, when it delegates broader governmental functions to a county, city or village. In such instances there is no authority for making claim against the State, but the agency exercising the delegated authority must respond for its own actionable conduct."

In this case the Saratoga Springs authority was held not to be a State agent, although in many respects it was much more closely and directly linked to the State than is a housing authority. For example, its employees were under the jurisdiction of the State Civil Service Commission and were members of the State retirement system, its moneys were directed to be paid to the State Department of Taxation and Finance and be paid out on a warrant of the State Comptroller, its property was ultimately to have reverted to the State, and the State made

appropriations towards its expense. If the Saratoga Springs authority is not an agent of the State, then, a fortiori, a housing authority is not.

Cases declaring various agencies to be State agents are all consistent with the distinction formulated in the *Saratoga Springs Authority* case (*supra*), and with the view that housing authorities are not State agents. Illustrative of these is *Breen* v. *Mortgage Commission* (285 N. Y. 425 [1941]). There, the Mortgage Commission of the State of New York was held to be a mere agent of the State, not subject to money judgment except in the Court of Claims. The attributes of that commission, as described by the court, are markedly different from those of housing authorities. The expenses of the commission are met out of a fund appropriated by the Legislature, whereas housing authorities obtain their expenses from the proceeds of their projects; moneys of the Mortgage Commission fund may be paid out only by the State Comptroller, whereas moneys of a housing authority are paid out on its own checks; the commission's moneys are the property of the State, whereas the moneys of a housing authority are its own; the commission has no property of its own which it holds other than as agent of the State, whereas a housing authority holds and owns real property in its own name. " It is plain ", says the court, " that a judgment obtained against the Commission would be against the State " (p. 430), but it seems equally plain that a judgment against a housing authority would not be a judgment against the State. So far as the authority's activities are concerned with Federal and city projects, the State has no interest, either direct or indirect, in any action against the authority. With respect to a State-aided project, the State may have some interest, since a judgment against the authority may conceivably increase the cost of operation of the project and thus require a larger subsidy payment by the State. But even as to those projects, the Public Housing Law does not now require, as it formerly did, that the State be made a party to the action, but merely that the State Commissioner of Housing shall be given notice of the action (§ 15).

Other cases which demonstrate how different a creature is a housing authority from the agencies judicially declared to be State agents are *Niagara Falls Power Co.* v. *White* (292 N. Y. 472 [1944]), *Pauchogue Land Corp.* v. *State Park Comm.* (243 N. Y. 15 [1926]), *Tomasetti Construction Co.* v. *Long Island R. R. Co.* (294 N. Y. 501 [1945]), *Sunlit Gardens* v. *Moore* (183 Misc. 343 [1944]), *Matter of Hicka* (180 Misc. 173 [1943]), *Dietrich* v. *Palisades Interstate Park Comm.* (114 Misc. 425

[1921]) and *Commissioners of State Insurance Fund* v. *Lapidus* (182 Misc. 368 [1943]). All of the agencies declared in these cases to be agents of the State differ basically and significantly from housing authorities in their creation, their organization, their purposes, their powers, and their practices.

Reverting to the specific statutory language that housing authorities are " agencies and instrumentalities of the state " (Public Housing Law, § 2), it may be observed that not only are such authorities so described but so are limited dividend housing companies, which are privately owned and privately managed and which operate for private profit. Urban redevelopment corporations, which are also privately owned and managed and which also operate for private profit, are similarly characterized in the Urban Redevelopment Corporations Law (L. 1941, ch. 892, § 2). It is hardly to be supposed that the Legislature intended to create branches of the State Government out of these private corporations (cf. *Tomasetti Construction Co.* v. *Long Island R. R. Co.*, *supra*). In fact, the view that these private housing companies can be considered agents of the State here again runs headlong into constitutional prohibitions, for if these corporations are agents of the State, then it may be argued that they should be considered as public corporations. But if these corporations are public corporations, then the Public Housing Law, in authorizing the creation of these corporations by private individuals, runs afoul of section 5 of article X of the Constitution, which prohibits the creation of public corporations except by special act of the Legislature. Since, then, it seems quite clear that private housing companies are not to be considered agents of the State merely because they are characterized as " agencies and instrumentalities of the state ", it follows that housing authorities, likewise, are not to be considered State agents merely because they are similarly described.

It would be giving these words " agencies and instrumentalities of the state " an entirely disproportionate importance to hold that, standing alone as they do, they are sufficient to create State agents out of housing authorities. Those words were used merely to indicate that housing authorities are creatures of the State, even as municipalities are creatures of the State, in that they are created for the purpose of accomplishing some State purpose. It is apparent that the Legislature used this characterization not because of an intention to make housing authorities and private housing corporations branches or arms of the State Government, but in order to express in forceful language its justification for granting to these authorities and corpora-

tions governmental powers such as condemnation and governmental privileges such as tax exemption. Perhaps language more apt could have been used. Perhaps it would have been more advisable to avoid the use of the word " agency ", so closely related in etymology to the word " agent ". But taking the Public Housing Law as a whole, reading it within the framework of the entire concept of the nature of public authorities as indicated by the many considerations already discussed, the intent of the Legislature seems abundantly clear — housing authorities are separate, legally independent public corporations; they are the agents of neither the State nor its municipalities.

Accordingly, this application must be granted, as James H. England is not at the present time an employee or agent of the State of New York.