ARKANSAS LOUISIANA GAS CO. *v.*
CITY of LITTLE ROCK, Ark. et al

73-237                                        506 S.W. 2d 555

Opinion delivered March 4, 1974
[Rehearing denied April 8, 1974.]

*Baker & Probst, P.A.*, by: *Charles W. Baker*, for appellant.

*Joseph C. Kemp*, City Atty.; *Smith, Williams, Friday, Eldredge & Clark*, by: *William L. Terry*, for appellees.

LYLE BROWN, Justice. The appellant Arkansas Louisiana Gas Company (Arkla) is a privately owned gas distribution utility; its franchise covers the city of Little Rock. Appellees are the city of Little Rock and the Little Rock Housing Authority. The crucial question is whether appellant or appellee Housing Authority must pay the cost of relocating gas lines within the existing street limits made necessary by an urban renewal improvement project. It is not disputed that if the project work was done either by the City or its agents, then Arkla must do the relocations at its own expense. *Arkansas State Highway Comm'n* v. *Arkansas P&L. Co.*, 235 Ark. 277, 359 S.W. 2d 441 (1962); *Arkansas State Highway Comm'n*. v. *Arkansas P. & L. Co.*, 231 Ark. 307, 330 S.W. 2d 77 (1959). To the contrary, Arkla contends that Housing Authority did not act as the agent for the City in carrying out the project and therefore Housing Authority is liable for the expense. The trial court found that the burden of the cost fell on Arkla on the theory that Housing Authority was in fact the agent of the City.

To sustain the trial court we would have to hold that in performing the project, the relationship of principal and agent existed between the City and Housing Authority, with the latter subject to the direction and control of the City. For the reasons hereinafter recited we find to the contrary.

Over the last several years Housing Authority has been engaged in various urban renewal projects in Little Rock. One of the improvements, and the one which gave rise to this litigation, was the modernization of a storm drainage system and a drainage ditch, publicly known as Swaggerty Branch, south of Roosevelt Road and east of High Street. The branch traverses several street crossings in the area. New bridges, street improvements, channelization of the branch and installation of underground storm sewers and drainage were the types of work to be done. Those improvements required the relocation of appellant's lines. Housing Authority filed this suit to require appellant to relocate the lines without cost to Housing Authority. By stipulation Housing Authority deposited the estimated cost of relocation and it was agreed that Arkla would be reimbursed if the court so required. Arkla completed the relocation at a cost of $8272.89. Approximately one year after the original suit was filed, the City

was permitted to join in as a plaintiff.

Housing authorities in the various cities and counties were authorized by Act 298 of the 1937 General Assembly. Ark. Stat. Ann. § 19-3001 et seq. (Repl. 1968). Pursuant to that act the city of Little Rock passed a resolution activating the Little Rock Housing Authority. That act authorized the development and operation of housing projects. In 1945, the housing authority act was enlarged by providing for urban renewal projects by the Housing Authority, those projects having to do with acquisition, clearance and redevelopment of blighted areas. Ark. Stat. Ann. § 19-3056 (Repl. 1968). It was under the 1945 amendment that the Swaggerty Branch project was instituted.

The main reason for holding as we do is that historically the housing authorities throughout the country have consistently been held to be separate and independent bodies corporate. The housing authorities acts heretofore enumerated are very extensive, a recitation of which would unduly lengthen this opinion. Summing up, the statutes demonstrate that the housing authorities are autonomous entities that have the power to act in every field related to their work independently of the cities.

The only case from our jurisdiction called to our attention is *Fagan Electric Co., Inc.* v. *The Housing Authority of Blytheville,* 216 Ark. 932, 228 S.W. 2d 39 (1950). The case is not squarely in point but it does point up the independence of a housing authority. There it was said that a housing authority "is no more an agency of the State than is any other corporation as to which the State has done nothing except bring it into existence".

A case more in point is *Housing Authority of City of Los Angeles* v. *City of Los Angeles,* 243 P. 2d 515 (1952). There a slum clearance project under urban renewal had been in operation for two years and the city tried to rescind its cooperation agreement with the housing authority. The court said: "Each functioning body, the city and the housing authority, is a separate body politic vested with specific duties and powers under the Housing Authorities Law and

Housing Cooperation Law . . ."

In a New York case the court had before it the question of the relation of the housing authority to the State and the City. The court said: "The very name 'authority' given to this type of public corporation imparts a distinct historical connotation of separateness and juridicial distinction from the State and from the municipal corporations of the State". *Ciulla* v. *State*, 77 NYS 2d 545, 191 Misc. 528 (1948).

Then there is the case of *Tumulty* v. *Jersey City*, 155 A 2d 148 (1959), which characterizes the local housing authority as being a separate, independent agency not subordinate to the municipality. It was the intent of the legislature, so the opinion concludes, that the authority be free from the domination of the local governing body.

An eighth circuit court of appeals case dealing with our housing statutes is *L. C. Eddy, Inc.*, v. *City of Arkadelphia*, 303 F. 2d 473 (1962). The court there characterizes the Arkansas Housing Authorities Act as endowing the Authority "with all the attributes of a municipal corporation".

From a study of the statutes, and in view of the cited authorities, we conclude that it was not the intention of the General Assembly that the urban renewal projects be carried out by the housing authority in some type of principal-agent relationship whereby the authority would be acting under the direction and control of and subservient to, the wishes of the local governing body. Once the governing body of the municipality approves a proposed urban renewal project and executes a cooperation agreement, the authority is free to develop the project according to the plans and without direction from the municipality. Incidentally, the 'cooperation agreement relative to the subject (Swaggerty Branch) nowhere intimates that the project shall be carried on with the City as principal and the Housing Authority as agent.

The main argument of appellees for the theory of principal-agent relationship between appellees is the passage of two resolutions. The City passed a resolution in August 1949 wherein it was resolved: "The Little Rock Housing

Authority is hereby designated as the *agency* (emphasis supplied) for the city of Little Rock to do such things and perform such duties as may be necessary for the city of Little Rock to participate in the program established by the Housing Act of 1949 of the 81st Congress, and particularly the program established by Title I of said Act". One week later the Housing Authority, in recognition of the City's resolution, passed its resolution accepting the offer of the City and "hereby agrees to act as the agency for the city of Little Rock in the Program of Slum Clearance and Urban Redevelopment". The word *agent* was used in one of the "whereas" paragraphs: "Whereas, Act 212 of Arkansas Act of 1945 designates Housing Authority in the State of Arkansas to act as the agent for municipalities in Slum Clearance and Urban Redevelopment". We have carefully scrutinized Act 212 and we find no mention of *agent*. Also, later resolutions to which we shall later refer make no mention of an agency.

Although the City did lend its cooperation under a written agreement of cooperation, it is clear that Housing Authority was the dominant moving party in the Swaggerty Branch improvement. Arkla's witness testified that "Arkla had all of its correspondence regarding this project from the Housing Authority and none from the City". In Resolution 2483 of Housing Authority it is stated:

> Housing Authority . . . proposes to undertake and carry out a Neighborhood Development Program . . . and Housing Authority proposes to enter into a Loan and Grant Contract with Housing and Urban Development.

The same language appears in the City's Resolution 4352 and in the cooperation agreement executed between the Housing Authority and the City. The resolutions to which we refer were in connection with Swaggerty.

Clifford L. Giles has been executive director of Housing Authority for four years. With reference to the project before us, the abstract of Giles' cross-examination reveals: "The resolution of the City Board of Directors contains the recitation that the Housing Authority proposes to undertake and

that the Housing Authority with the aid and cooperation of the City proposes to undertake. It doesn't say anything about Housing Authority being the agent of the City. There is nothing in the Resolution of the Board of Directors that says the Housing Authority is acting as agent".

We hold that the redevelopment project in litigation was in actuality the project of Housing Authority; that Housing Authority was the moving force in causing the gas lines to be altered; that so much of the deposit as is necessary to reimburse Arkla for actual cost should be paid over to it; and that the costs in the trial court should be assessed against appellees.

Reversed and remanded for entry of order consistent with this opinion.