OPINION OF THE COURT
J. Emmett Murphy, J.
This is a prosecution under Vehicle and Traffic Law § 1160 (d) for failure to turn right as required by signs and pavement markings.
On January 9, 1987, Police Officer John Mullins of the Yonkers Police Department observed a black Jeep station wagon proceeding southbound on Rumsey Road near its intersection with Spruce Street. The officer and his partner were stopped nearby for the purpose of observing traffic at that location.
Rumsey Road at that point is a two-way street with a center island. North of Spruce Street it contains two southbound traffic lanes which are clearly marked. South of Spruce Street it contains one southbound traffic lane and one parking lane. At and near the intersection with Spruce Street are a number of official signs and pavement markings indicating that the left lane of southbound traffic may turn left or proceed straight ahead, and that the right lane must turn right.
The officer observed the Jeep station wagon stopped in the right-hand southbound lane behind another vehicle which was stopped for the red light at the intersection. A number of other cars were stopped in the left lane. When the light turned green, the vehicle in front of the Jeep turned right. The Jeep proceeded into the intersection and veered into the left lane in front of the first car in that lane, forcing its driver to brake abruptly to avoid collision with the Jeep.
Having observed the failure to turn right and near collision, Officer Mullins pursued and stopped the Jeep. Defendant Ellman, the driver, produced a valid New York driver’s license and valid New York registration for the Jeep, which bore official license plate number 94478Y and was registered to "Westchester County SPCC Police”. He was issued uniform traffic ticket No. TD 6680376 for "Fail To Turn As Indicated” under Vehicle and Traffic Law § 1160 (d).
*1012 After trial, defendant moved to dismiss on the grounds that one sign was improperly posted, the wrong section of the Vehicle and Traffic Law was cited, and that he was a police officer responding in a police vehicle to a police call in an emergency operation, and, therefore, was not obliged to obey turn indications.
The motion is denied. While the matter could have been disposed of by the customary brief decision and verdict from the Bench, the facts presented in support of defendant’s third defense are disturbing, and deserve to be addressed at length.
Officer Mullins testified credibly that he observed the signs and pavement markings at the time of the infraction and that all were legible and properly positioned. Defendant produced a picture indicating that one of the signs has been turned so it no longer faces southbound traffic. The court concludes that this occurred sometime after the incident and that, in any event, the other official signs and pavement markings were ample notice to all that the "right lane must turn right”.
Defendant argues that Vehicle and Traffic Law § 1160 (d) does not govern failure to turn as required. The court agrees.
Section 1160 (d) provides, in almost relevant part, as follows: "When * * * signs * * * are placed within or adjacent to intersections and thereby require and direct that a * * * course * * * be traveled by vehicles turning at an intersection, no driver of a vehicle shall turn a vehicle at an intersection other than as directed”. This section does not proscribe defendant’s conduct, as he did not turn. He proceeded straight ahead, through the intersection, only veering into the left when forced to enter the one remaining southbound traffic lane after the intersection.
The summons also indicates, however, that the substance of the charge is "Fail To Turn As Indicated”. A supporting deposition, timely served and filed prior to trial, clearly states the date, time and place and that "said Jeep was in the right lane”. It continues that "there are several signs posted stating 'Right Lane Must Turn Right’ ” and that the officer "observed said Jeep not make the right turn and go south on Rumsey Road”.
Vehicle and Traffic Law § 1128 (c) provides in relevant part as follows: "When official traffic control devices * * * designate those lanes to be used by traffic moving in a particular direction * * * drivers of vehicles shall obey the directions of every such sign, signal or marking.”
*1013 Clearly, the summons and supporting deposition advised defendant that he was charged with disobeying a sign which designated the right-hand lane as one to be used only by traffic turning right, in that he used the right lane and failed to turn right.
"The language in the information containing an erroneous numerical reference to a particular law may be disregarded as surplusage if the information clearly informs the defendant of the acts upon which the prosecution will rely to prove a violation of law. In the case at bar there has been no indication that the defendant does not understand the charge brought against him or is hindered in any way in making his defense.” (People v Demar, 65 Misc 2d 465, 467; see also, People v Love, 306 NY 18.)
Defendant herein raises this point for the first time after trial, in a posttrial memorandum of law. Clearly, if the defendant had not understood the charge or been hindered in his defense, the point would have been raised before or during the trial by counsel.
The court concludes that failure to cite Vehicle and Traffic Law § 1128 (c) was harmless, and Vehicle and Traffic Law § 1160 (d) was surplusage.
Defendant’s remaining defense is that he was a police officer in a police vehicle responding to a police call. (The prosecution is not required to prove the negative of this assertion to make out a prima facie case [People v Baur, 102 Misc 2d 971]. It rests, in substantial part, on defendant’s intent.)
At the trial, defendant produced the above-mentioned registration. In the space reserved for the registrant, the first line states, "Westchester County” and the second line states "SPCC Police”. Defendant also produced an official-looking identification card, sealed in plastic, which contained his picture. Under the picture is typed "Chief Detective/CPO”. To the right of the picture, at the top, is printed "State of New York”. Below that line is printed "Westchester County SPCC”. Below that is printed "Police Agency”. Below that is printed "Child Protective Agency”. The card does not bear the logo of the State of New York or Westchester County, and defendant admitted it was not issued by either. Rather, he stated it was issued by the Westchester County Society for the Prevention of Cruelty to Children (hereinafter the Society), a not-for-profit corporation under N-PCL 1403.
Officer Mullins testified that there were 3 or 4 children in *1014 the back of the station wagon. Defendant testified that he had picked them up on the street and was proceeding to answer another call, consisting of "a child abuse emergency” on McLean Avenue in Yonkers.
Vehicle and Traffic Law § 1104 provides in relevant part as follows:
"(a) The driver of an authorized emergency vehicle, when involved in an emergency operation, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
"(b) The driver of an authorized emergency vehicle may * * *
"4. Disregard regulations governing directions of movement or turning in specified directions.
"(c) Except for an authorized emergency vehicle operated as a police vehicle, the exemptions herein granted to an authorized emergency vehicle shall apply only when audible signals are sounded * * * and when * * * at least one red light will be displayed and visible.”
Vehicle and Traffic Law § 114-b defines "emergency operation” as: "[t]he operation, or parking, of an authorized emergency vehicle, when such vehicle is engaged in transporting a sick or injured person, pursuing an actual or suspected violator of the law, or responding to, or working or assisting at the scene of an accident, disaster, police call, alarm of fire or other emergency. Emergency operation shall not include returning from such service.”
Vehicle and Traffic Law § 101 defines "Authorized emergency vehicle” as follows: "Every ambulance, police vehicle, fire vehicle”. ,
Vehicle and Traffic Law § 132 defines "police officer” as follows: "All police officers as defined in subdivision thirty-four of section 1.20 of the criminal procedure law, and every duly designated peace officer as defined in section 2.20 of such law, when such peace officer is acting pursuant to his special duties.”
CPL 2.10 specifically designates as a "peace officer”, "7. Officers or agents of a duly incorporated society for the prevention of cruelty to animals or children.”
Vehicle and Traffic Law § 132-a defines "police vehicles” as follows: "Every vehicle owned by the state, a public authority, a county, town, city or village, and operated by the police *1015 department or law enforcement agency of such governmental unit * * * and a vehicle owned and operated by the law enforcement unit of a public or private corporation authorized by law to maintain a unit for the enforcement of law on the property of such corporation shall be a police vehicle only for the purposes of section one hundred one of this chapter.”
Defense counsel argues that the Society’s vehicle meets both definitions of a "police vehicle” under Vehicle and Traffic Law § 132-a. It meets neither.
Relying on a concurring opinion in People ex rel. State Bd. of Charities v New York Socy. for Prevention of Cruelty to Children (161 NY 233, 250), defendant argues concerning the Society, that "Police powers are given to it and it is, in effect, a prosecuting agent of the state”. Further, since a private corporation cannot exercise the State’s police power (Cuomo v Long Is. Light. Co., 127 AD2d 626), "[i]t is, therefore, clear that the Westchester County SPCC is an agency of the State and as such their vehicles are police vehicles”.
This argument must fail. That the Society is permitted to assist the State, in a limited fashion, in exercising a small but important portion of its police power, is not sufficient to equate the Society with the State. (Cf., e.g., Lindsay v Bowers, 17 F2d 264.) N-PCL 1403 (b) permits the Society to "prefer a complaint” relating to children to a court and "aid in presenting the law and facts to such court”. This does not make the Society the State, and its vehicles State-owned police cars. It does not make defendant Ellman a prosecutor. (See, Matter of Sharon B., 127 AD2d 761.)
Nor is this sufficient to equate the Society’s vehicle with one owned by "a public authority * * * and operated by the police department or law enforcement agency of such governmental unit”. (Vehicle and Traffic Law § 132-a.) In Fox v Mohawk & Hudson Riv. Humane Socy. (165 NY 517, 528), the Court of Appeals limited the holding in the Board of Charities case (supra), and held that a society for the prevention of cruelty to animals, unlike a volunteer fire department, is not a "subordinate governmental agency”, noting that "membership in the department as well as its discipline and management were at all times subject to the control and regulation of the common council of the city; while membership in the defendant may be accorded or withheld at its pleasure, and the management of the corporation and the selection of its officers is wholly vested in the corporators.”
*1016 Societies for the prevention of cruelty to animals, as well as cruelty to children, are created under N-PCL 1403. They are not created or continued under, or governed by, the Public Authorities Law (cf., e.g., Public Authorities Law art 9). Nor are they corporations to which the name "authority” is given by any law. (Cf., e.g., Ciulla v State of New York, 191 Misc 528.) Rather, they are "societies,” created to assist the court and the prosecutors of violations of the law, in the limited area of laws involving children (cf., e.g., N-PCL 1403, and Social Services Law § 395 et seq., and § 412 et seq.). While their purpose is to that extent public and may assist in determining whether they are a public corporation, it is not sufficient to constitute them a "public authority”. (Cf., e.g., Grace & Co. v State Univ. Constr. Fund, 44 NY2d 84, and cases cited therein.)
Defendant’s argument that the vehicle is a police vehicle under the second definition contained in section 132-a must also fail. He alleges that "the Westchester SPCC is authorized to maintain a unit for the enforcement of law upon the property and offices of the agency and outside of such property.” No citation of authority for such proposition is given, and the court can find no legal authority for the Society to maintain such a unit to enforce law on its property.
N-PCL 202 (d) specifies which not-for-profit corporations may maintain such a police force, and limits their powers. The Society does not fall within those whose purposes are enumerated therein. Further, the shield of such special policemen must be worn conspicuously, apparently negating the possibility of a "detective”.
While other private and public corporations formed pursuant to other laws may have extensive properties, and police forces "for the enforcement of law on the property of such corporations”, the Society was not founded to own parks, campuses, housing projects or other such holdings. Defendant’s allegation of authority to patrol the Society’s property is unsupported by law or logic.
The court concludes that the Society’s vehicle is not a "police vehicle” as defined in Vehicle and Traffic Law § 132-a. The rules of the Commissioner of Motor Vehicles, at 15 NYCRR 17.5, provide that official plates consisting of five numerals followed by a letter are reserved "for vehicles owned by political subdivisions and public authorities of this State”. The face of the vehicle’s registration would support the con *1017 elusion that the issuing official may have been misled to believe that the "SPCC Police” is a department of "Westchester County”, the owner, when, in fact, the owner is "Westchester County SPCC”, and "Police” is both gratuitous and erroneous. Vehicle and Traffic Law § 401 (6) (b) clearly indicates that the Legislature specifically describes such societies when it wishes to confer a special registration privilege upon their vehicles.
Defendant argues that he is a police officer, under Vehicle and Traffic Law § 132, since he is a peace officer who was "acting pursuant to his special duties.” As such, he argues, the public policy of this State is to permit him to perform his duties exempt from the provisions of the Vehicle and Traffic Law. (This section, and the fact that the Society is permitted to assist the State in its exercise of a portion of its "police power”, are apparently the only attempted justification for the Society’s issuance of "Police Agency” identification listing defendant as its "Chief Detective”, and its securing of official plates listed to the "SPCC Police” of "Westchester County”.)
This State’s public policy is found in its laws, and no such blanket policy exists. The exemptions from certain rules of the Vehicle and Traffic Law contained in Vehicle and Traffic Law § 1104 are not conferred upon "police officers” or "peace officers”. They are conferred only upon certain vehicles and their drivers. The Society’s vehicle is not a police vehicle, nor does it meet any of the other classifications of an authorized emergency vehicle contained in Vehicle and Traffic Law § 101. Since the phrase "police officer” does not appear in Vehicle and Traffic Law § 1104, the definition thereof in Vehicle and Traffic Law § 132 has no reference to section 1104.
If a "peace officer”, such as certain special police officers, had special duties relating to traffic control and directed a motorist to disobey a traffic control device, Vehicle and Traffic Law § 1110 (a) would exempt the motorist from a duty to obey the device, as Vehicle and Traffic Law § 1102 requires that he obey the "police officer”. In order to elevate the reporting of certain accidents, the Legislature required that they be reported to a "police station”, rather than be reported to a "police officer”. (Vehicle and Traffic Law § 600; see also, §§ 601, 602, 603 for further indication that the Legislature did not intend full interchangeability of status even under the Vehicle and Traffic Law.)
The Attorney-General has stated (1981 Opns Atty Gen 132) *1018 that even if a vehicle is owned by a town and used by peace officers who are town constables in the performance of their special duties (which may include traffic regulation within their area of geographical jurisdiction) such vehicle is neither a police vehicle nor an authorized emergency vehicle, and so must obey all traffic regulations, may not be identified as a police vehicle, and may not be equipped with a siren or red light. (1981 Opns Atty Gen 132.) The law was later amended to include town constables, specifically.
The equation of a police officer and a peace officer acting pursuant to his special duties, contained in Vehicle and Traffic Law § 132, should not be given broad application. (Cf., e.g., 1976 Opns Atty Gen 223.) It was not intended to blur the distinction carefully drawn between the two by the Criminal Procedure Law. Rather, its intent appears primarily to have been to broaden and clarify the powers of those peace officers whose special duties include enforcement of the Vehicle and Traffic Law or portions thereof. (Cf., e.g., Vehicle and Traffic Law § 423.)
Unlike police officers, peace officers are not required to complete an approved police training program, and meet the age, educational and fitness requirements of the Civil Service Law. They are not members of and accountable to a police force or department, are not required to enforce the general criminal laws of the State, and have limited enforcement powers (see, 1980 Opns Atty Gen 269). This lack of screening, police training and police department accountability is an important reason to maintain the distinction.
It is deeply disturbing to this court that this Society and defendant would attempt to assume the identities of a police department and police officer when they are neither.
Defendant proceeded through the intersection in an illegal manner, resulting in the near collision described by Officer Mullins, at a time when he had someone else’s children in the car. He testified he was "responding to a call” sent by his "dispatcher” who beeps him. Although the Jeep is equipped, he stated, with "fireball” lights, siren, P.A. system, loudspeakers, beepers and other assorted police paraphernalia, he decided not to use them but to "proceed at a risk”, to the children and others. The "child abuse emergency” was two children locked out of their apartment without a key. He said he planned to, and in fact did, leave the other children in the car while he investigated. Although there were "at least six *1019 vehicles and seven to eight officers working” at the time, he responded as the nearest. After arrival and investigation, he referred the case to "another detective”, and took no further action with regard to it.
Defendant described the vehicle as one "used for law enforcement purposes as a police vehicle”, "a police vehicle”, and "an authorized emergency vehicle”. He stressed that he is "a police officer” and, when asked his status under the Criminal Procedure Law, stated that he is "an unrestricted peace officer”, explaining that he is not limited to "special duties”, but has "general criminal law enforcement” powers. As does his Society-issued identification card, his testimony stressed that he is a police officer, with all references to children abbreviated or minimized.
His "dispatcher” produced a child abuse report to corroborate that he was sent. It indicates he was beeped. It also indicates that a "back up detective” was beeped, although she stated that the detective was standing next to her at the time she wrote it. She said she thinks "back up” means "to verify that I gave him the phone call to show up.” She did not discuss the case with Ellman. The "police office” has moved four times in two years.
With 7 or 8 other "detectives” working in six other vehicles, and "Chief Detective” Ellman dashing from call to call, the court inquired if the Society presented its Yonkers cases in the Family Court in Yonkers. Ellman testified "Absolutely, Your Honor, pending cases are there now”. Asked how many, he stated "There is one case pending at this very moment”. He stated that that case did not arise from this incident, but that "this Agency has brought dozens and dozens of petitions within the jurisdiction of the Yonkers Family Court”. With the consent of defense counsel, the court was permitted to call the Family Court to verify the Society’s activity there. The court was informed that the Society had brought no cases there within the last 12 months, and that the only matter it has pending from the Society is a 1983 case remitted from the Appellate Division.
The manner of defendant’s testimony, and the substance of his testimony, leave him with virtually no credibility. If he were truly a police officer, actions such as those exhibited in this incident would doubtless have led to his dismissal long ago. That he remains a peace officer, albeit restricted, causes the court concern, but is best left to the office of the Attorney- *1020 General, who has a statutory voice in every not-for-profit corporation.
At the conclusion of the trial, the court finds that the People have proven defendant’s guilt of a violation of Vehicle and Traffic Law § 1128 (c) beyond a reasonable doubt.
Defendant is directed to be present with his license and conviction stub in Part I of this court on June 23, 1987, at 10:00 a.m. for sentence.