The Honorable Alvin Simes State Senator 43 Lambert Circle West Helena, AR 72904
Dear Senator Simes:
I am writing in response to your request for my opinion regarding a question I will paraphrase as follows:
 What rights of a tenant were violated when an agent/representative/invitee of the tenant was asked to leave an "all residents meeting" of the Forrest City Housing Authority [the "Authority"]?
RESPONSE
I am unable to answer this question without knowing more about the circumstances that prompted the ejection at issue in your request. However, assuming the meeting qualified as a "public meeting" of the Authority's commissioners and the individual was asked to leave solely because he was not a resident subject to the Authority, I believe his exclusion would violate the terms of the Arkansas Freedom of Information Act (the "FOIA"), A.C.A. § 25-19-101 et seq. (Repl. 1996 Supp. 2001).
For purposes of my analysis, I will assume that the Authority was created under either the Housing Authorities Act, A.C.A. § 14-169-201 et seq.
(Repl. 1998 Supp. 2001) or the Supplemental Housing Authorities Act, A.C.A. § 14-169-101 et seq. (Repl 1998 Supp. 2001). In Ark. Op. Att'y Gen. No. 93-081, my immediate predecessor offered the following analysis regarding the status of housing authorities:
 The Arkansas Supreme Court has stated . . . that housing authorities are "separate and independent bodies corporate." Ark. La. Gas Company v. City of Little Rock, 256 Ark. 112, 114, 506 S.W.2d 555 (1974). And the Eighth Circuit Court of Appeals has characterized the Arkansas Housing Authorities Act as endowing a housing authority "with all the attributes of a municipal corporation." L.C. Eddy v. City of Arkadelphia, 303 F.2d 473, 476 (1962). The court in Ark. La. Gas Company held that the Little Rock Housing Authority was not an agent of the city for purposes of determining who bore the expense of relocating gas lines. The court summed up the housing authorities acts by stating that ". . . the statutes demonstrate that the housing authorities are autonomous entities that have the power to act in every field related to their work independently of the cities." 256 Ark. at 114. The court quoted the following from a California case:
 "Each functioning body, the city and the housing authority, is a separate body politic vested with specific duties and powers under the Housing Authorities Law. . . ."
 Id., citing Housing Authority of City of Los Angeles v. City of Los Angeles, 243 P.2d 515 (1952).
 A housing authority is created, under the Arkansas Housing Authorities Act, as "a public body corporate and politic. . . ." A.C.A. 14-169-207
(1987). Arkansas Code Annotated 14-169-211 (1987) states that "[a] housing authority shall constitute a public body corporate and politic, exercising exclusively public and essential governmental functions and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this subchapter. . . ." A housing authority has a defined "area of operation." A.C.A. 14-169-203(8) (1987). Its powers are extensive. See A.C.A. 14-169-211
to -220. Its purpose is, as expressed by the Arkansas Supreme Court: ". . . slum clearance by removing the evils existing therein and emanating therefrom which are a great detriment to the public welfare of our citizens generally and in the attempted prevention of which private agencies cannot successfully cope." Hogue v. The Housing Authority of North Little Rock, 201 Ark. 263, 267, 144 S.W.2d 49
(1940).
 The foregoing compels me to conclude that a housing authority would in all likelihood be deemed to fall within the following definition of a "political subdivision," drawn from a New Jersey case and adopted by the Arkansas Supreme Court:
 [P]olitical subdivisions have been defined as that "they embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions; and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded mediately or immediately within their territory for the peculiar benefit of the people there residing."
 Arkansas Highway Commission v. Clayton, 226 Ark. 712, 715, 292 S.W.2d 77 (1956), quoting Allison v. Corker, 67 N.J.L. 596, 52 A. 362. See also Muse v. Prescott School Dist., 233 Ark. 789, 791, 349 S.W.2d 329
(1961).
I agree in all respects with this analysis.
The FOIA contains the following definition of the term "public meetings":
 "Public meetings" means the meetings of any bureau, commission, or agency of the state, or any political subdivision of the state, including municipalities and counties, boards of education, and all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds.
A.C.A. § 25-19-103(4). The FOIA further provides:
 Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
A.C.A. § 25-19-106(a).
Although the Authority's activities are indisputably public in nature, the possibility exists at least in theory that its activities are not financed with public funds. Section 14-169-220 of the Code provides that a housing authority can issue bonds to be repaid either using funds received from governmental entities or from income generated by the housing project financed from the bond proceeds. However, given the Authority's quasi-governmental status, I consider the source of its funding immaterial to your question. As my immediate predecessor noted in Ark. Op. Att'y Gen. No. 98-139:
 It is clear that all state and local governmental entities are subject to the FOIA, and the FOIA also applies to" any other agency wholly or partially supported by public funds or expending public funds." A.C.A. § 25-19-103; see also A.C.A. § 25-19-106(a); Op. Att'y Gen. 97-016, 94-023, and 96-013.
See also J. Watkins, The Arkansas Freedom of Information Act 32 (3d ed. 1998) ("Although the `public funding' approach is used to identify those entities whose records and meetings are open to the public absent a specific exception, the FOIA also states that the meetings of `governing bodies' otherwise within the act must be held in public."). In my opinion, the Authority, as an entity possessed of "all the attributes of a municipal corporation," L.C. Eddy, 303 F.2d at 476, is clearly subject to the FOIA. See Ark. Op. Att'y Gen. No. 99-327 (opining that records maintained by the Siloam Springs Housing Authority generally constitute "public records" under the FOIA). Accordingly, any meeting of its governing body — i.e., its commissioners — would need to be open to the public, including to nondisruptive nonresidents of the area served by the Authority, unless the meeting qualified as an "executive session" called to consider the personnel matters recited at A.C.A. § 25-19-106(c). See
Ky. Op. Att'y Gen. No. 98-OMD-44 (opining that city council could not restrict attendance at council meetings to city residents under Kentucky Open Meetings Act, KRS 61.840).
I do not mean to suggest in the foregoing that the governing body of a public entity is invariably obligated to accommodate anyone and everyone who wishes to attend its meetings. The applicable guidelines regarding restrictions on attendance are summarized by Professor Watkins as follows:
 The right to attend a meeting is subject to reasonable restrictions, such as a limited seating capacity or procedural regulations aimed at ensuring that an agency business is conducted in an orderly manner. Although a governing body cannot be expected to provide seating for everyone who wishes to attend a meeting, it cannot thwart the FOIA by choosing to meet at a location, other than its regular meeting site, which "lack[s] the seating capacity for the number of individuals reasonably anticipated to attend. . . ." The question is whether an agency has provided reasonable access, under the circumstances, to those persons wishing to attend and has not systematically excluded or arbitrarily refused admittance to any individuals. . . .
 Regarding procedural regulations, a 1977 Attorney General's opinion [Ark. Op. Att'y Gen. No. 77-086] states that a governing body has the right "to conduct its meetings in an orderly manner and to be free from unwarranted interference in the conduct of its affairs." Thus, an agency may, consistently with the FOIA, adopt rules dealing with those who seek to disrupt an open session.
Watkins, supra at 302 (footnotes omitted; quoting Ark. Op. Att'y Gen. No. 93-299).
Applying the above principles to the specific meeting at issue in your request will entail conducting a factual inquiry of the sort I am neither equipped nor authorized to undertake. The finder of fact will need to determine, inter alia, whether the meeting was in fact a meeting of the Authority's commissioners, whether the Authority or some unrelated party or entity requested the individual to leave, whether the individual was in any sense disruptive during the meeting and whether some permissible logistical concern might have prompted the request. I can offer only a general opinion that the FOIA would prohibit the Authority from expelling an individual from a commissioner's meeting solely because he is not a resident of the area the Authority controls.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh