The Honorable Robert N. Jeffrey State Representative 181 Charlotte Ann Camden, Arkansas 71701-9452
Dear Representative Jeffrey:
I am writing in response to your request for an opinion regarding the following questions:
 1. Is it permissible under Arkansas law for a public housing authority to establish and employ its own law enforcement agency?
 2. If the answer is yes, would certified law enforcement officers, employed by the housing authority, have complete powers of arrest?
RESPONSE
In my opinion, the answer to your first question is "no," rendering your second question moot.
Question 1: Is it permissible under Arkansas law for a public housingauthority to establish and employ its own law enforcement agency?
As noted above, I believe the answer to this question is "no."
Section 14-169-107 of the Arkansas Code (Supp. 2007), which authorizes municipal police departments to release to public housing authorities any criminal *Page 2 
background records of housing applicants, defines the term "public housing authority" as follows:
 (d)(2) "Public housing authority" means a [local] housing authority established under § 14-169-207, a regional housing authority established under § 14-169-304, or a consolidated housing authority established under § 14-169-401[.][1]
All varieties of public housing authority have been legislatively declared public bodies corporate and politic. See A.C.A. §§14-169-207(a)(1) (Repl. 1998); 14-169-304(a)(1) (Repl. 1998); A.C.A. § 14-169-401(a)(1) (Repl. 1998). As the Arkansas Supreme Court noted inArkansas Louisiana Gas. Co. v. City of Little Rock, 256 Ark. 112, 114,506 S.W.2d 555 (1974):
 [H]istorically the housing authorities throughout the country have consistently been held to be separate and independent bodies corporate. . . . Summing up, the statutes demonstrate that the housing authorities are autonomous entities that have the power to act in every field related to their work independently of the cities.
See, e.g., City of Fort Smith v. Fort Smith Housing Authority,256 Ark. 254,506 S.W.2d 534 (1974) (housing authority is not a municipal affair and city council cannot substitute its own method of filling vacancies which occur on the board). As the court noted in Fort Smith HousingAuthority, supra at 258-59:
 A Housing Authority is an agent of the state dealing with public health standards and falls squarely within the traditional police powers of the state.[2] A city Housing authority does not operate *Page 3 
within the scope of "municipal affairs" (i.e., those affecting, germane to or concerning the municipality and its government) as distinguished from those state affairs excepted in the Home Rule Act. 19-3002 [now A.C.A. § 14-1169-303 (Repl.1998)] sets forth the declaration of the necessity of the Housing Authority Act and clearly manifests a statewide rather than a municipal concern:
 That there exists in the State insanitary or unsafe dwelling accommodations . . . that within the State there is a shortage of safe or sanitary dwelling accommodations . . . that the aforesaid conditions cause an increase in and spread of disease and crime and constitute a menace to the health, safety, morals and welfare of the residents of the State and impair economic values. (Emphasis added.)
 Although a Housing Authority is authorized in a municipality (as well as in a county or by combinations), the benefit of its existence obviously spreads past the city (or county). In Hogue v. Housing Authority of North Little Rock, 201 Ark. 263, 144 S.W.2d 49 (1940), we held the Housing Authority Act constitutionally valid. In doing so, we quoted with approval from Los Angeles v. Dockweiler, 14 Cal.2d 417, 94 P.2d 794
(1939), where that court found:
 Both reason and authorities support us that the proposed elimination of slums and the erection of safe and sanitary low rent dwelling units for persons of the prescribed income will do much to advance the general welfare and to protect *Page 4 
the public safety and morals and are in fact and in law public purposes.
 Powers of the Authority are vested in its Commissioners. No Commissioner of a city Authority may be an officer or employee of the city. 19-3005, 19-3007. A city Housing Authority constitutes a public body corporate and politic exercising essential governmental functions, having perpetual succession, the power to sue and be sued, to enter into contracts in exercise of its powers, to exercise the power of eminent domain, "to cooperate with the city, the county, the State or any political subdivision thereof in action taken" within the scope of its primary functions. It is in essence a separate Authority created to cooperate with the city or county as the case may be.
The current powers of a housing authority are set forth in subchapter 2 of title 14, chapter 169 (Repl. 1998).[3] Section 14-169-211 sets forth the following general powers of a housing authority:
 A housing authority shall constitute a public body corporate and politic, exercising exclusively public and essential governmental functions and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this subchapter, including the following powers in addition to others granted in this subchapter:
 (1) To sue and be sued;
 (2) To have a seal and to alter the same at pleasure;
 (3) To have perpetual succession; *Page 5 
 (4) To make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the authority; and
 (5) To make and from time to time amend and repeal bylaws, rules, and regulations not inconsistent with this subchapter to carry into effect the powers and purposes of the authority;
 (6) To invest any funds held in reserves or sinking funds, or any funds not required for immediate disbursement, in property or securities in which savings banks may legally invest funds subject to their control; and
 (7) To purchase its bonds at a price not more than the principal amount thereof and accrued interest, all bonds so purchased to be cancelled;
 (8) To exercise all or any part or combination of the powers granted in this section and §§ 14-169-212 — 14-169-218 and 14-169-225(b).
Conspicuously absent in this list of enumerated powers is any grant to a housing authority of the power to form its own law enforcement agency.[4] Although one might read broadly as including such authority the grant in A.C.A. § 14-169-211 of a housing authority's power to exercise "exclusively public and essential governmental functions . . . necessary or convenient to carry out and effectuate the purposes and provisions of this subchapter," I am not prepared to opine that such an oblique mandate would warrant a housing authority's formation of its own law enforcement agency. Rather, I believe the anticipated mechanism for ensuring the security of housing developments is in all likelihood through "cooperation agreements" of the sort described by the Arkansas Supreme Court as follows:
 The "United States Housing Act of 1937," with its amendments, authorizes federal cooperation with states and local governments in the development of "decent, safe and sanitary dwellings for families of low income, in rural or urban communities" and in the corresponding elimination of "unsafe and insanitary housing *Page 6 
conditions . . . that are injurious to the health, safety and morals of the citizens of the nation." Arkansas by Act 298 of 1937, the "Housing Authorities Act," created local Housing Authorities in the state and authorized local governmental units to enter into "cooperation agreements" as contemplated by the federal law.
Scroggins v. Kerr, 217 Ark. 137, 138, 228 S.W.2d 995 (1950) (footnotes omitted). One such agreement is described as follows in HousingAuthority of Blytheville v. City of Blytheville, 228 Ark. 736, 737-38,310 S.W.2d 737 (1958):
 On March 12, 1940, appellant, Housing Authority (hereafter referred to as "Housing") was created by the City of Blytheville under the provisions of Secs. 19-3001 — 19-3074 Ark. Stats. 1947. In 1941 the City and Housing entered into a cooperation agreement under the terms of which Housing was to erect a low rent housing project in the City. Under this agreement appellee, City, agreed that it would "not levy, impose or charge any taxes, special assessments, service fees, charges or tolls against the project or against the Authority or with respect to the project and that it will furnish without cost to the Authority and the tenants of each project the usual municipal services and facilities which are or may be furnished without cost or charge to other dwellings and inhabitants in the City, including but not limited to fire, police and health protection and service, street maintenance and repair, garbage, trash and ash collection and disposal, street lighting on public streets within any project and the boundaries thereof and sewer services."
See also Scroggins, supra at 146 ("The Arkansas Housing Authorities Act (Act 298 of 1937) laid the groundwork for local housing authorities in the cities and authorized the cities, after they recognized the existence of the authorities, to make cooperative agreements with them.").
In my opinion, under Arkansas law, a housing authority cannot establish its own law enforcement agency by employing individuals qualified to serve as "law enforcement officers" in that they have completed the training program contemplated at A.C.A. § 12-9-106(a) (Repl. 2003). I believe this conclusion follows from the fact that, irrespective of whether an individual has completed the referenced training program, he cannot function as a "law enforcement officer" unless he is employed by a "law enforcement agency" — a variety of organization *Page 7 
that does not include a housing authority, which has not been statutorily charged with exercising law enforcement activities. Subsection 12-9-601(2) of the Code (Repl. 2003), which is contained in a chapter of the Arkansas Code dealing with law enforcement officer training and standards, defines an "employing agency" as "any state agency or any county, municipality, or other political subdivision of the state, or any agent thereof, which has constitutional or statutoryauthority to employ or appoint persons as law enforcementofficers." (Emphasis added.) I believe that if the legislature had intended to authorize a housing authority not only to expedite the process of removing slums and blight by developing qualified properties but further by policing those properties in lieu of local law enforcement officials, it would have said so directly. In this regard, I will note that the Arkansas Law Enforcement Training Academy reports that it has no records of a housing authority having ever formed its own law enforcement department in this state.
Having offered this interpretation of Arkansas law, I must note that various other jurisdictions have authorized housing authorities to form their own police forces. See, e.g., Williams v. Philadelphia HousingAuthority Police Dept., 380 F.3d 751 (3d Cir. 2004); U.S. v. White
(W.D.Pa. 5-10-2007) (discussing surveillance by a Pittsburgh Housing Authority police officer); Commonwealth v. Parker, 26 EAP 2006 (Pa. 4-18-2007) (discussing the report of a shooting to Housing Authority Police); Commonwealth v. Wilson, 927 A.2d 279 (Pa.Super. 2007) (discussing the conduct of an Allegheny County Housing Authority police officer); U.S. v. Jones, 454 F.3d 642 (7th Cir. 2006) (referring to a previous arrest by the Chicago Housing Authority police department);In the Matter of City of New York, 849 N.E.2d 942 (N.Y. 2006) (discussing the merger of the New York City Housing Authority Police Department and the New York City Police Department); State v. Dett,891 A.2d 1113 (Md. 2006) (discussing a traffic stop by a Baltimore City Housing Authority police officer). However, in the absence of any direct constitutional or statutory authority to do so, I do not believe an Arkansas housing authority may form its own police force.[5]Compare Op. Att'y Gen. No. 2006-010 *Page 8 
(opining that in the absence of legislation expressly authorizing them to do so, school districts could not establish their own law enforcement agencies).
Question 2: If the answer is yes, would certified law enforcementofficers, employed by the housing authority, have complete powers ofarrest?
This question is moot in light of my response to your first question.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] With respect to the pertinent legislation, A.C.A. § 14-169-101
(Repl. 1998) provides:
 (5) "Housing Authorities Act" means §§ 14-169-201
— 14-169-205, 14-169-207 — 14-169-225, 14-169-227, 14-169-229 — 14-169-240, and 14-169-804;
 (6) "Supplemental Housing Authorities Act" means §§ 14-169-223, 14-169-228, 14-169-237, 14-169-238, 14-169-302 — 14-169-313, 14-169-501 — 14-169-503, and this act.
[2] But see Fagan Electric Co., Inc. v. Housing Authority,216 Ark. 932,228 S.W.2d 39 (1950), in which the court declared that a housing authority is not subject to state-agency bidding requirements, offering the following rationale:
 We find nothing . . . to indicate that the State has reserved any control over local housing authorities. The appellee is no more an agency of the State than is any other corporation as to which the State has done nothing except bring it into existence.
See also Arkansas Louisiana Gas Co. v. City of Little Rock,256 Ark. 112, 115, 506 S.W.2d 555 (1974), in which the court with approval offered the following regarding the law of a sister state:
 In a New York case the court had before it the question of the relation of the housing authority to the State and the City. The court said: "The very name `authority' given to this type of public corporation imparts a distinct historical connotation of separateness and juridical distinction from the State and from the municipal corporations of the State." Ciulla v. State, 77 N.Y.S. 2d 545, 191 Misc. 528 (1948).
[3] This subchapter addresses the powers of housing authorities in cities and counties. See A.C.A. § 14-169-207 (Repl. 1998). Section14-169-302 (Repl. 1998) extends these powers to regional housing authorities. Subsection 14-169-401(a)(1)(B) (Repl. 1998) authorizes consolidated housing authorities comprising two or more municipalities to exercise the same powers as regional housing authorities. Subchapter 5 of title 14, chapter 169 (Repl. 1998) authorizes county and regional housing authorities to provide housing for farmers of low income. Section 14-169-605 (Repl. 1998) authorizes any housing authority formed under the Housing Authorities Act and any other law relating to slum clearance and housing projects for persons of low income to exercise the powers of any housing authority in pursuing redevelopment projects for blighted areas.
[4] In this regard, I will note that none of the statutes referenced in subsection (8) of this statute contains any direct authorization for a housing authority to form its own police force.
[5] As an illustration of a statutory scheme that clearly authorizes a housing authority to form a law enforcement agency, a Pennsylvania court recited the following legislative declaration:
 An authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof, which powers shall include all powers necessary or appropriate to carry out and effectuate the purpose and provisions of this act, including the following powers, in addition to others herein granted:
 * * * (ee) In a city of the second class, to appoint police officers who shall have the same rights, powers and duties as other peace officers in the Commonwealth with respect to the property and enforcing order on and adjacent to the grounds and buildings of the Authority: Provided, That said police officers complete the same course of instruction as is required for municipal polices by the act of June 18, 1974 (P.L. 359, No. 120), referred as the Municipal Police Education and Training Law.
Commissioner v. McDonald, 2005 Pa. Super. 285, quoting 35 P.S. § 1550
(footnotes and emphasis omitted). Arkansas law contains no comparable provision.