THE RUTH R. REMMEL REVOCABLE TRUST;
Ruth R. Remmel; Mary Remmel Wohlleb; The Raymond R. & Margarita Remmel Revocable Trust; The Roland R. Remmel Irrevocable Life Trust; The Beth Wohlleb Trust #1; The Beth Wohlleb Trust #2; The Sara Wohlleb Trust #1; The Ariana Maria Remmel Trust #1; The Ariana Maria Remmel Trust #2; The Carina E. Remmel Trust #1; The Carina E. Remmel Trust #2; The Remmington Rebsamen Remmel Trust #1; The Remington Rebsamen Remmel Trust #2; and the 1997 Roland R. Remmel Revocable Living Trust *v.* REGIONS FINANCIAL CORPORATION and Allen J. McDowell

06-616                                                        255 S.W.3d 453

Supreme Court of Arkansas
Opinion delivered April 12, 2007

[Rehearing denied May 17, 2007.]

*Eichenbaum, Liles & Heister, P.A.*, by: *James H. Penick* and *Christopher O. Parker*, for appellants.

*Kaplan, Brewer, Maxey & Harralson, P.A.*, by: *Philip E. Kaplan*, for appellee Allen J. McDowell.

*Friday, Eldredge & Clark, LLP*, by: *William A. Waddell, Jr.*, for appellee Regions Financial Corporation.

J IM GUNTER, Justice. This appeal arises from a March 20, 2006, order, entered by the Pulaski County Circuit Court, granting a motion to confirm arbitration awards filed by Appellee Regions Financial Corporation (Regions), against Appellants, The Ruth R. Remmel Revocable Trust, Ruth R. Remmel, as trustee, and other trusts and individuals related to the Ruth R. Remmel family, including The Raymond R. & Margarita Remmel Revocable Trust; The Roland R. Remmel Irrevocable Trust; The Beth Wohlleb Trust #1 and Trust #2; The Sara Wohlleb Trust #1 and Trust #2; The Ariana Maria Remmel Trust #1 and Trust #2; The Carina Elizabeth Remmel Trust #1 and #2; The Remington Rebsamen Remmel Trust #1 and Trust #2; and the 1997 Roland R. Remmel Revocable Living Trust. Appellants (collectively "the Remmels") also appeal an April 14, 2006, order dismissing with prejudice their third-amended complaint. We affirm the circuit court's rulings.

## I. Facts

In 1928, Rebsamen Insurance Corporation (Rebsamen), an insurance brokerage corporation, was established in Little Rock by Raymond Rebsamen. Throughout the years, Rebsamen was privately held until February 5, 2001. On February 5, 2001, the

Remmels and Regions entered into a stock-purchase agreement ("SPA") for the sale of Rebsamen's entire stock to Regions. The transaction closed within a few days of the Remmels signing the agreement.

On March 12, 2003, the Remmels filed a complaint for damages against Regions, Phil Herrington, a director of Rebsamen and the Remmels' financial advisor, and Appellee Allen J. McDowell, Rebsamen's chief executive officer, president, and chairman. In the Remmels' complaint, they alleged that, in 1999, Herrington and McDowell made contact with prospective purchasers of Rebsamen, but withheld this information from Rebsamen's Board of Directors, and conspired to cause Rebsamen to be sold to Regions for below fair value. The Remmels alleged several intentional torts, including breach of fiduciary duty against Herrington and McDowell; tortious interference with business expectancy and facilitation of breach of fiduciary duty against Regions; conversion against Herrington and McDowell; violation of the Arkansas Trade Secrets Act, found at Ark. Code Ann. §§ 4-75-601 through 4-75-607 (Repl. 2001); unjust enrichment; deceit against Herrington and McDowell; constructive fraud against Herrington and McDowell; conspiracy; and negligence against Herrington and McDowell. The Remmels later voluntarily dismissed their claims against Herrington and filed a separate lawsuit against him.

On April 21, 2003, Regions filed the first of three motions to compel arbitration, pursuant to Section 8.11 of the SPA. On September 18, 2003, the circuit court denied Regions's motion to compel arbitration, finding that the complaint contained claims outside the arbitration clause. Additionally, on September 18, 2003, the circuit court entered an order dismissing the Remmels' claims for conversion, unjust enrichment, and misappropriation of trade secrets.

On January 20, 2004, Regions filed a second motion to compel arbitration, which McDowell later joined. On April 22, 2004, the Remmels filed a second-amended complaint, and on April 27, 2004, a supplemental second-amended complaint was filed. The Remmels' second-amended complaint included allegations of several intentional tort claims, including, *inter alia*, violation of the Arkansas Securities Act, codified at Ark. Code Ann. §§ 23-42-101 through 23-42-509 (Repl. 2000).

On May 10, 2004, Regions filed a renewed motion to compel arbitration in response to the Remmels' second-amended

complaint and supplemental second-amended complaint. Mc-Dowell joined Regions's motion by separate pleading. On July 7, 2004, the circuit court entered an order staying all issues and claims with respect to Regions's claims. Further, the circuit court granted Regions's motion to compel arbitration and denied McDowell's motion. The court further ruled that, because the SPA between Regions and the Remmels involved interstate commerce, the arbitration commenced pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 through 16 (2000 & Supp. III 2003). On July 21, 2004, the circuit court entered a separate order referring the joint counterclaim of Regions and McDowell to arbitration. Additionally, on July 21, 2004, the Remmels filed a third-amended complaint, realleging the claims set forth in the second-amended complaint filed on April 22, 2004. A consent order was entered on July 22, 2004, in which all claims against McDowell were referred to arbitration. The parties further agreed that the arbitration of the claims would be consolidated with the arbitration proceeding involving the Remmels and Regions.

On November 28, 2004, the Remmels filed an amended claim with the American Arbitration Association, and Regions filed an answer on December 17, 2004. The Remmels' claims were arbitrated in an evidentiary hearing before an arbitrator. On September 12, 2005, the arbitrator entered an interim award in which the arbitrator denied the Remmels' claims in their entirety, and Regions's counterclaim was denied in its entirety. Specifically, the arbitrator denied the Remmels' following claims: (1) breach of fiduciary duty against McDowell; (2) tortious interference with contract, business relations and expectancy; facilitation of breach of fiduciary duty; and breach of fiduciary duty, confidence, and trust against Regions; (3) conversion against McDowell; (4) violation of the Arkansas Trade Secrets Act; (5) unjust enrichment; (6) fraudulent concealment against McDowell; (7) fraud against McDowell; (8) fraudulent concealment against Regions; (9) violation of the Arkansas Securities Act against Regions; (10) violation of the Arkansas Securities Act against McDowell; (11) constructive fraud against Regions; (12) conspiracy; (13) negligence against McDowell. On November 17, 2005, the arbitrator entered a final award dealing with attorneys' fees. On December 8, 2005, the Remmels filed a motion to vacate the arbitration award on the basis that "the clear and specific intent of the parties not to arbitrate the tort claims," and "the award was outside the scope of the arbitrator's authority, which is derived solely from the parties' agreement." After a hearing on the matter, the circuit court denied

the Remmels' motion to vacate, finding that (1) the claims against Regions were properly ordered to arbitration under the SPA and the FAA; (2) the Remmels voluntarily agreed to arbitrate their claims against McDowell; and (3) the Remmels waived any argument regarding the scope of the arbitration by failing to raise that issue in the arbitration proceeding. On February 9, 2006, the circuit court entered an order denying the Remmels' motion to vacate. The circuit court entered a judgment on March 20, 2006, confirming the arbitration awards.

The circuit court held a hearing on April 7, 2006, to consider Regions's motion to dismiss the Remmels' third-amended complaint. On April 14, 2006, the circuit court made the following findings: (1) the arbitration award, including the interim award, was res judicata as to the facts and claims asserted in the third-amended complaint against Regions and McDowell; (2) the third-amended complaint was also barred by collateral estoppel as to Regions based upon the arbitration award in favor of McDowell; (3) the court incorporated prior orders dismissing the Remmels' claims for conversion, misappropriation of trade secrets, and unjust enrichment; and (4) the court denied arguments regarding an issue of standing. On April 19, 2006, the Remmels filed a supplemental and amended notice of appeal. The Remmels now appeal the March 20, 2006, and April 14, 2006, orders.

## II. Arbitrability of the Remmels' claims against Regions

For their first point on appeal, the Remmels argue that the circuit court erred in affirming the arbitration awards in its March 20, 2006, order. They contend that their suit for damages, alleging intentional business torts, should not be forced into arbitration, thereby depriving them of a trial by jury. Further, the Remmels assert that the SPA, by its terms, excludes their tort claims in their second- and third-amended complaints. No argument is advanced by the Remmels that there is no agreement, but rather they contend that the SPA does not create a binding arbitration of their tort claims.

In response, Regions argues that the circuit court properly ruled that its referral of the case to arbitration was proper under the FAA. Specifically, Regions contends that the Remmels were bound by arbitration when they amended their complaint to include the breach-of-employment-contract claim against McDowell. Thus, Regions asserts that McDowell's breach of contract led to the alleged intentional torts, thereby bringing those claims

within the purview of Article 8 of the SPA. Regions further maintains that, once the Remmels arbitrated those tort claims without objection, they waived any argument regarding the scope of the arbitration.

## A. FAA and AUAA

At the outset, we note that tort claims are not subject to arbitration under the Arkansas Uniform Arbitration Act ("AUAA"). *See* Ark. Code Ann. § 16-108-201(b)(2). Further, when the underlying dispute involves interstate commerce, the FAA, instead of the AUAA, applies. *Walton v. Lewis*, 337 Ark. 45, 987 S.W.2d 262 (1999). State and federal courts have concurrent jurisdiction to enforce an arbitration agreement pursuant to the FAA. *Id.* Here, the Remmels argue that their intentional-tort claims should not be forced into arbitration, while Regions argues that the referral to arbitration was proper under the FAA, as the circuit court ruled in its order compelling arbitration dated July 7, 2004. The Remmels make no argument concerning interstate commerce, but rather argue that the terms of the SPA provide that the law of Arkansas applies. Because the Remmels did not appeal the circuit court's ruling of that July 7, 2004, order that the FAA applied, we do not reach this issue.

## B. Contractual language of the SPA and the Remmels' complaint

The first issue in the case *sub judice* is whether the Remmels agreed to arbitrate their claims. Arkansas Code Annotated § 16-108-201 (Supp. 2006) allows for arbitration between parties and provides in relevant part:

> (a) A written agreement to submit any existing controversy to arbitration arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract.

> (b)(1) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract.

*See also* Ark. Code Ann. § 16-108-202 (1987).

As a matter of public policy, arbitration is strongly favored. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001). Arbitration is looked upon with approval by courts as a less expensive and

more expeditious means of settling litigation and relieving docket congestion. *Id.* Arbitration is a matter of contract between the parties, and the same rules of construction and interpretation apply to arbitration clauses as apply to agreements generally. *Id.* The construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law. *Id.* Accordingly, we will give effect to the parties' intent as evidenced by the arbitration agreement itself. *Id.* In light of the policy favoring arbitration, such agreements will not be construed strictly but will be read to include subjects within the spirit of the parties' agreement. *Id.* Any doubts and ambiguities of coverage will be resolved in favor of arbitration. *Id.*

Because the duty to arbitrate is a contractual obligation, we must determine from the language of the SPA whether the parties intended to arbitrate the particular dispute in question. *Showmethemoney Check Cashers, Inc. v. Williams,* 342 Ark. 112, 27 S.W.3d 361 (2000). Section 8.11 of the SPA provides:

> *All disputes arising under this Article 8 (other than claims in equity) shall be resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.* Arbitration shall be by a single arbitrator experienced in the matters at issue and selected by the Indemnifying Party, and the Indemnified Party and in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall be held in such place in Little Rock, Arkansas as may be specified by the arbitrator (or any place agreed to by the Indemnifying Party, the Indemnified Party and the arbitrator). The decision of the arbitrator shall be final and binding as to any matters submitted under this Article 8; provided, however, if necessary, such decision and satisfaction procedure may be enforced by either the Indemnifying Party or the Indemnified Party or in any court of record having jurisdiction over the subject matter or over any of the Parties to this Agreement. All costs and expenses incurred in connection with any such arbitration proceeding (including reasonable attorneys' fees) shall be borne by the Party against which the decision is rendered, or, if no decision is rendered, such costs and expenses shall be borne equally by the Indemnifying Party as one Party and the Indemnified Party as the other Party. If the arbitrator's decision is a compromise, the determination of which Party or Parties bears the costs and expenses incurred in connection with any such arbitration proceeding shall be made by the arbitrator on the basis of the arbitrator's assessment of the relative merits of the Parties' positions.

(Emphasis added.) Article 2.2 provides that "[n]either the execution and delivery of this Agreement by Rebsamen . . . will . . . (ii) constitute or result in Default[.]" Section 2.15 of the SPA defines a default as "a Material Adverse Effect on Rebsamen."

The Remmels argue that they "did not allege anything with regard to any warranty or representations, or any breach of the SPA." We disagree. Here, for the following reasons, the contractual language of the SPA indicates that the Remmels' claims fit squarely within Article 8 of the SPA. First, we note that the second-amended complaint, which was incorporated by reference in the third-amended complaint, contains numerous allegations of McDowell's breach of contract with Rebsamen. Second, the Remmels amended their complaint against Regions and McDowell to include their breach-of-employment-contract allegation that McDowell violated his employment contract with Rebsamen, and in doing so, the Remmels brought the contract claim, as well as those tort claims stemming from the breach-of-contract claim, within Article 8. By alleging a breach-of-contract claim, the Remmels essentially alleged a "default," which is expressly prohibited by Sections 2.2 and 2.15 of the SPA. Thus, these claims qualify as "all disputes" and bring the case within the purview of Article 8, thereby making it subject to arbitration.

Further, we note that, once the Remmels began the arbitration proceedings, they failed to object to the scope of the arbitration. In an order denying the Remmels' motion to vacate the arbitration award, dated February 9, 2006, the circuit court made the following finding of fact: "Plaintiffs [the Remmels] waived any argument as to the scope of the arbitration by failing to raise that issue [those claims having been arbitrated] in the arbitration proceeding." Here, the Remmels had a full and fair opportunity in the arbitration proceeding to litigate the matters raised in their second- and third-amended complaints, and the arbitrator disposed of the claims. *See Riverdale Development Co. v. Ruffin Building Systems, Inc.*, 356 Ark. 90, 146 S.W.3d 852 (2004) (holding that a third party "may use the award to bind his opponent if the party to be bound, or a privy, was before the arbitrator, had a full and fair opportunity to litigate the issue, and the issue was actually decided by the arbitrator or was necessary to his decision"). The fact that the Remmels submitted their disputes to arbitration implies an agreement to be bound by the arbitration board's

decision. *Id.*; *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996). When the reasons supporting an objection are known beforehand, a failure to object will not be excused. *Chrobak v. Edward D. Jones & Co.*, 46 Ark. App. 105, 878 S.W.2d 760 (1994) (citing *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1359 (6th Cir. 1989)).

Therefore, for the foregoing reasons, we hold that, based upon our reading of the contractual language of the SPA, the circuit court properly confirmed the arbitration awards. Accordingly, we affirm the circuit court's rulings on this issue.

### III. Arbitrability of the Remmels' claims against McDowell

For their second point on appeal, the Remmels argue that they reserved the right to appeal the arbitrability of their claims against McDowell. Specifically, the Remmels contend that "[j]ust as the rules on construction apply to the SPA, the same should be applied to the consent order of July 22, 2004." In response, Regions asserts that the Remmels misstate the consent order by arguing that it reserved a right for them to appeal the arbitrability of their claims against McDowell.

With the aforementioned case law in mind, we turn to the consent order, dated July 7, 2004, which provides in pertinent part:

> The Plaintiffs and Defendant Allen J. McDowell have agreed that all claims against McDowell and McDowell's counterclaim against Plaintiffs are to be referred to arbitration. These parties have further agreed that the arbitration of these claims will be consolidated with the arbitration proceeding involving the Plaintiffs and Regions Financial Corporation, with Plaintiffs *reserving any and all rights to appeal the decision of the Court compelling arbitration of their claims against Regions Financial Corporation.*

(Emphasis added.)

Here, the clear language of the circuit court's order reveals that the Remmels reserved the right to appeal the decision of claims against *Regions*. Any claims against McDowell are not expressly mentioned in the order. Thus, by the language of the order, the Remmels waived an objection to arbitrate against McDowell. For these reasons, we decline to reach this issue.

### IV. Res judicata and collateral estoppel

For their third point on appeal, the Remmels argue that the circuit court erred in dismissing their third-amended complaint under Rule 12(b)(6) based upon either res judicata or collateral estoppel. Regions responds, arguing that the circuit court properly dismissed the third-amended complaint on the grounds of res judicata and collateral estoppel because the claims were fully adjudicated and were denied in arbitration.

The standard of review for a motion to dismiss is when matters outside the pleadings are presented and not excluded by the circuit court, a motion to dismiss will be treated as a motion for summary judgment. *Beebe v. Fountain Lake School Dist.*, 365 Ark. 536, 231 S.W.3d 628 (2006). Ordinarily, upon reviewing a court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *Id.* However, in a case like this one that does not involve the question of whether factual issues exist but rather the application of the legal doctrine of res judicata, we simply determine whether appellee was entitled to judgment as a matter of law. *Id.*

The circuit court granted the Remmels' motion to dismiss on the basis of res judicata. Res judicata has two facets, one being issue preclusion, or collateral estoppel, and the other being claim preclusion. *Mason v. State,* 361 Ark. 357, 206 S.W.3d 869 (2005). The term, res judicata, has sometimes been used to refer only to claim preclusion; however, res judicata encompasses both issue and claim-preclusion. *Id.* Under claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action. *Id.* Res judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Jayel Corp. v. Cochran,* 366 Ark. 175, 234 S.W.3d 278 (2006).

We have said that the doctrine of res judicata provides that a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action. *See Riverdale, supra.* However, except in certain limited situations, a valid and final award by an arbitrator has the same effect under the rules of res judicata as the judgment of a court. *Id.*; *Restatement (Second) of Judgments* § 84 (1982). When a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises

new legal issues and seeks additional remedies. *Id.* The key question regarding the application of res judicata is whether the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Id.*

With this precedent in mind, we turn to the present case. The Remmels filed their third-amended complaint on July 21, 2004, between the July 7, 2004, order compelling arbitration and the arbitrator's September 12, 2005, interim award. In the third-amended complaint, the Remmels set forth the names of the trusts and the dates that they were created. As to the claims, the Remmels "adopted and realleged each and every matter as set forth in their Second Amended Complaint filed herein on April 22, 2004." On February 16, 2006, Regions and McDowell filed a motion to dismiss the Remmels' third-amended complaint based upon Rule 12(b)(6). The circuit court dismissed the Remmels' third-amended complaint with prejudice on the grounds that res judicata and collateral estoppel applied because of the arbitration award in favor of Regions.

Here, the Remmels had the opportunity to present the following issues against Regions to the arbitrator: (1) breach of fiduciary duty against McDowell; (2) tortious interference with contract, business relations and expectancy; facilitation of breach of fiduciary duty; and breach of fiduciary duty, confidence, and trust against Regions; (3) conversion against McDowell; (4) violation of the Arkansas Trade Secrets Act; (5) unjust enrichment; (6) fraudulent concealment against McDowell; (7) fraud against McDowell; (8) fraudulent concealment against Regions; (9) violation of the Arkansas Securities Act against Regions; (10) violation of the Arkansas Securities Act against McDowell; (11) constructive fraud against Regions; (12) conspiracy; (13) negligence against McDowell. The arbitrator rendered a final judgment as to these claims, which they alleged in their complaints, and the parties to the arbitration were the same parties named in the complaints. Thus, we hold that the circuit court correctly ruled that the arbitration award is res judicata to the claims asserted by the Remmels in their third-amended complaint. We also hold that the circuit court properly concluded that the Remmels were collaterally estopped from further litigating these same issues against Regions in circuit court. *See Riverdale, supra.*

Further, as Regions notes in its brief, the Remmels conceded that the arbitration award, if affirmed, "by itself would be

sufficient to dismiss the complaint." Because we affirm the circuit court's confirmation of the arbitration award, we affirm the circuit court's dismissal of the Remmels' complaint.

### V. Dismissal of the Remmels' claims of conversion, trade secrets, and unjust enrichment

For their fourth point on appeal, the Remmels argue that the circuit court erred in dismissing their claims for conversion, violation of the Arkansas Trade Secrets Act, found at Ark. Code Ann. §§ 4-75-601 through 4-75-607, and unjust enrichment. Regions responds, arguing that these claims were submitted to the arbitrator in the amended claim and are barred by res judicata.

Keeping our precedent in mind, we turn to these claims raised by the Remmels. On September 12, 2005, the arbitrator denied the claims of conversion, violation of the Arkansas Trade Secrets Act, and unjust enrichment in the interim arbitration award. In fact, the arbitrator noted in his interim-award order that the claims of conversion and trade-secrets violations were withdrawn at the hearing. Additionally, in an order dated September 18, 2003, the circuit court dismissed the Remmels' claims for conversion, unjust enrichment, and trade secrets. The September 18, 2003, order was not appealed. For the reasons expressed under the Remmels' third point on appeal, these claims were fully adjudicated before an arbitrator and were ruled upon in the interim award. Thus, we hold that the circuit court properly dismissed these claims on the basis of res judicata.

### VI. Regions's alternative claim

As an alternative grounds for relief, Regions argues that we should affirm the dismissal of the third-amended complaint in regard to the Remmels' claims, except those of Mary Wohlleb, on the basis of the statute of limitations.[1] Regions asserts that the claims are barred because more than three years have lapsed after

---

[1] *See* Ark. Code Ann. § 4-75-603 (Repl. 2001) (three years for misappropriation of trade secrets); Ark. Code Ann. § 16-56-105(3) (Repl. 2005) (three years for breach of fiduciary duty, tortious interference with contract, unjust enrichment, fraud, and negligence); Ark. Code Ann. § 16-56-105(6) (Repl. 2005) (three years for conversion); and Ark. Code Ann. § 23-42-106(f) (Repl. 2000) (three years for securities fraud).

the execution of the SPA. Because we affirm and hold in favor of Regions, we decline to address this issue.

Affirmed.

BROWN and IMBER, JJ., not participating.