

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-16-534

|  |  |
|---|---|
| LARRY DEWAYNE HEINRICH AND SETH HEINRICH<br><br>APPELLANTS<br><br>V.<br><br>ALLISON ANDERS<br><br>APPELLEE | **Opinion Delivered** August 30, 2017<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35CV-13-253]<br><br>HONORABLE ROBERT H. WYATT, JR., JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellants Larry Heinrich and Seth Heinrich appeal from the Jefferson County Circuit Court's findings of fact and conclusions of law entered on May 24, 2016, in which the court found that (1) David Myhand breached the contract for the sale of real property located at 6712 Sheridan Road, Pine Bluff, Arkansas ("the property"), that he entered into with Larry and appellee Allison Anders (formerly Heinrich); (2) Larry fraudulently transferred the property to Seth, the son of Larry and Allison; (3) Allison's March 5, 2001 power of attorney in favor of Larry was not used in the conveyance of the property; and (4) the unrecorded and unsigned assignment of the real-estate contract did not meet the requirements of the statute of frauds. On appeal, Larry and Seth[1] argue that (1) the circuit lacked subject-matter jurisdiction based on the doctrine of res judicata and (2) the circuit court clearly erred in

---

[1]David did not appeal from the circuit court's findings of fact and conclusions of law.

concluding that the power of attorney was not used in the conveyance of the property from David to Seth. We affirm.

Allison and Larry were married when they entered into the contract for the sale of the property with David in May 2009. Under the terms of the contract, Allison and Larry made a cash payment of $1000 to David when the contract was executed and thereafter paid David $1050.42 in eleven monthly installments. The facts are undisputed that Allison and Larry made all payments in a timely fashion. Pursuant to the contract, David was required to execute and deliver to Allison and Larry a warranty deed conveying the property free and clear of all liens and encumbrances. However, on July 8, 2010, David signed a warranty deed granting title to the property to Seth.

On May 16, 2013, Allison filed this action against Larry, Seth, and David alleging that David was in breach of the contract for the sale of real property that he had entered into with Larry and Allison. Her complaint also alleged that Larry fraudulently conveyed the property in question to Seth.

At trial, Jimmy Dill testified that he was serving as David's attorney in 2009 and that he prepared the contract for the sale of the property from David to Allison and Larry. Jimmy stated that David called to advise that the contract had been paid in full and that it was time for him (David) to deliver the deed. According to Jimmy, David said that Allison and Larry did not want the deed to be in their names; rather, they wanted the deed to be in Seth's name. Jimmy did not talk with Seth or Allison about this, but he did recall talking to Larry. Jimmy told Larry that David was contractually obligated to grant the property to Allison and Larry

but that he (Jimmy) could draft an assignment of the contract in order to permit David to grant the property to Seth.

Jimmy prepared an assignment wherein Allison and Larry authorized David to grant the property to Seth. It had signature lines for David, Allison, Larry, and Seth. Jimmy also prepared the warranty deed granting the property to Seth. Jimmy testified that he told David not to sign the deed until the assignment had been executed by all parties and that David signed the assignment in his (Jimmy's) presence. Jimmy could not recall whether Allison, Larry, or Seth signed the assignment in his presence or whether Allison signed it at all. Jimmy further stated that he did not have a signed copy of the assignment, yet David signed the deed, which was introduced at trial. Jimmy produced only an unsigned, unacknowledged, and unrecorded copy of the assignment, which was also introduced at trial.

According to Jimmy, at some point Larry came to his office with a durable power of attorney that Allison had signed in favor of Larry in March 2001. Jimmy agreed that under the power of attorney, Larry had the authority to sign an assignment on behalf of Allison in order to transfer property. However, Jimmy said that he had no knowledge that Allison and Larry were using the power of attorney as part of the real-estate transaction with David and that he (Jimmy) would have prepared the assignment differently had he known that Larry was signing on behalf of Allison. Jimmy said that he would have stated in the assignment that Larry was appearing personally and as attorney-in-fact for Allison and that the signature lines would have had the same designations.

David testified that after Allison and Larry had paid the full amount of the contract, Larry called David and requested that David convey the property to Seth. David told Larry to

SLIP OPINION

contact Jimmy. David acknowledged that his signature was on the warranty deed. He did not recall signing an assignment.

Allison testified that she and Larry separated in February 2010, after they had entered into the contract to purchase the property in question, but before they had paid the contract in full. She testified that the divorce was a "real rough situation."[2] Allison said that in August 2010, she and Larry retained an attorney to file for bankruptcy, and during that process, she learned that the property was not in her and Larry's names. She learned that David had transferred the property to Seth. Allison testified that when she discovered this, she "fell to the ground. I freaked out. I had no idea that it wasn't in my name or Larry's name." She said that she, Larry, and Seth never had any discussions about putting the property in Seth's name to help him with college expenses. She said that if Seth testified that such conversations took place, he was lying because he was afraid that Larry would stop giving him money.

Allison further stated that she had never seen the unsigned, unrecorded assignment until trial, she had never been asked to sign it, and she did not sign it. She agreed that she had signed the power of attorney in 2001; however, she said that she and Larry did not discuss using the power of attorney in any way in connection with the purchase of the property and that she did not authorize Larry to use it to convey title to the property to their son.

Seth[3] testified that he was not a party to the contract and that he did not pay for the property. He stated that he remembered signing the assignment, although he could not

---

[2]They were divorced in January 2012.

[3]Seth was twenty-six years old at the time of trial.

remember where he signed it, when he signed it, or who was present. He said that he had not lived on the property since it was deeded to him; Larry had been living there with his girlfriend. Seth also testified that Allison and Larry told him they planned to deed the property to him to help with his college expenses.

Larry did not testify.

The circuit court entered findings of fact and conclusions of law finding that David had breached his contractual obligation to Larry and Allison by conveying title to the property to Seth. The circuit court found that the unsigned and unrecorded assignment of the contract and Allison's power of attorney in favor of Larry failed to relieve David of his contractual obligation. The court further found that the conveyance of the property to Seth was fraudulent. The circuit court ordered David to execute a new warranty deed conveying the property to Larry and Allison as tenants in common; ordered Seth to execute a quitclaim deed conveying any interest in the property to Larry and Allison as tenants in common; and ordered the Jefferson County clerk to strike the warranty deed that David executed in favor of Seth. This appeal followed.[4]

Larry and Seth's first point on appeal challenges the circuit court's subject-matter jurisdiction. During trial, counsel for Larry and Seth moved to dismiss Allison's complaint, relying on the doctrine of res judicata. Counsel contended that the property had been disposed of as part of the parties' 2012 divorce proceeding. The circuit court suspended the trial,

---

[4]This is the second time Larry and Seth's appeal has been before us. In an opinion dated March 8, 2017, we remanded their appeal to supplement the record and addendum, and we ordered rebriefing due to deficiencies in the brief. *Heinrich v. Anders*, 2017 Ark. App. 153. Larry and Seth have corrected the deficiencies, and we may now consider the appeal.

reviewed pleadings from the divorce file, and permitted the parties to brief the issue. On January 12, 2015, the circuit court entered a letter opinion denying Larry and Seth's oral motion to dismiss. Citing the parties' 2012 divorce decree, the court found that "the decree did not address any specific real property, either by reference or otherwise," and that res judicata did not apply to Allison's cause of action for breach of contract because the matter had not previously been adjudicated. On appeal, Larry and Seth argue that the circuit court erred in concluding that res judicata did not apply. They contend that the disposition of the property had been adjudicated as part of the parties' prior divorce proceedings and could not be relitigated.

Pursuant to Ark. R. Civ. P. 12(b) and (c), a motion to dismiss is converted to a motion for summary judgment when matters outside the pleadings are presented to, and not excluded by, the court. *Francis v. Francis*, 343 Ark. 104, 109–10, 31 S.W.3d 841, 844 (2000). Because it is clear from the wording of the letter opinion that the circuit court considered matters outside the pleadings, we review this issue as one from summary judgment. Ordinarily, upon reviewing a court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *Ruth R. Remmel Revocable Tr. v. Regions Fin. Corp.*, 369 Ark. 392, 402, 255 S.W.3d 453, 461 (2007). However, in a case like this one that does not involve the question of whether factual issues exist but rather the application of the legal doctrine of res judicata, we simply determine whether appellee was entitled to judgment as a matter of law. *Id.*, 255 S.W.3d at 461.

The claim-preclusion aspect of res judicata forecloses relitigation in a subsequent suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on

proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involved the same claim or cause of action; and (5) both suits involved the same parties or their privies. *McCoy v. Jackson*, 2011 Ark. App. 456, at 2 (citing *Pentz v. Romine*, 75 Ark. App. 274, 57 S.W.3d 235 (2001)). Additionally, claim preclusion bars not only the relitigation of issues that were actually litigated in the first suit but also those that could have been litigated but were not. *Id.*

The first three requirements are satisfied in this case. The 2012 divorce proceedings resulted in a final judgment on the merits, it was based on proper jurisdiction, and it was fully contested in good faith. However, the fourth and fifth requirements are not satisfied. The 2012 divorce action did not include Allison's breach-of-contract claim, and David and Seth were not parties to the divorce action. Further, the property in question could not have been disposed of by the parties in the divorce action because the parties did not own it—it belonged to Seth. Therefore, we hold that the circuit court did not err in finding that res judicata did not apply because the disposition of the property was not litigated in the parties' divorce proceedings.

Larry and Seth's second point on appeal is that the circuit court erred in finding that Allison's power of attorney in favor of Larry was not used to convey the property from David to Seth. In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Waddell v. Ferguson Home Builders, LLC*, 2017 Ark. App. 66, at 5, 513 S.W.3d 271, 275. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. *Id.*, 513 S.W.3d at 275.

There is no dispute in this case that on March 5, 2001, Allison executed a durable power of attorney authorizing Larry to execute assignments on her behalf and that the power of attorney was in effect in July 2010[5] when David deeded the property to Seth. Nevertheless, the circuit court found that the power of attorney was not used to convey the property from David to Seth because it concluded that the assignment, in which Allison and Larry authorized David to grant the property to Seth, was not signed and not recorded. We hold that the circuit court was not clearly erroneous in reaching these findings.

Whether the assignment was signed by Allison, by Larry as attorney-in-fact for Allison, or by any other party were facts in dispute. The only person to testify that he signed the assignment was Seth, although he could not remember where he signed it, when he signed it, or who was present. There is no evidence that Larry signed the assignment as Allison's power of attorney—Larry did not testify. David did not recall signing the assignment. Jimmy could not recall whether Allison, Larry, or Seth had signed in his presence or whether Allison had signed it at all. Allison testified that she had never seen the assignment until trial, she had never been asked to sign it, and she did not sign it. The only assignment introduced into evidence was an unsigned, unrecorded, and unacknowledged copy.

Additionally, Allison testified that she and Larry did not discuss using the power of attorney in any way with the property and that she did not authorize Larry to use it to convey title to the property to their son. Likewise, Jimmy testified that he had no knowledge that Larry intended to use Allison's power of attorney to sign the assignment on her behalf. Jimmy said

---

[5]Allison revoked her power of attorney in July 2011.

that had he known this, he would have prepared the language of the assignment to reflect that. The unsigned assignment contains no such language.

There is overwhelming evidence in this case that the assignment was never signed by the parties. The only evidence to the contrary was Seth's testimony. Facts in dispute and determinations of credibility are within the province of the fact-finder. *El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 640, 269 S.W.3d 362, 368 (2007). After hearing the evidence, the circuit court weighed it in favor of Allison and found that there was no signed or recorded assignment; thus, the power of attorney was not used to convey the property from David to Seth. In our review, we are not left with a firm conviction that a mistake has been committed and affirm on this point.[6]

Affirmed.

KLAPPENBACH and MURPHY, JJ., agree.

*The Brad Hendricks Law Firm*, by: *Lloyd W. Kitchens*, for appellants.

*Maxie G. Kizer, P.A.*, by: *Maxie G. Kizer*, for appellee.

---

[6]Under this same point on appeal, Larry and Seth challenge the circuit court's finding that had Larry used the power of attorney his action would have been contrary to law because "an agent's duty is to act solely for his principal's benefit in all matters connected with agency . . . ." We need not reach the merits of this argument because we affirm the circuit court's finding that the power of attorney was not used to convey the property from David to Seth.