ROBERT J. GLADWIN, Judge
Appellants Amy Villines ("Villines") and Gerrie Parker ("Parker") appeal the October 7, 2016 and May 30, 2017 orders of the Boone County Circuit Court dismissing appellees, the City of Harrison ("Harrison") and the Harrison Housing Authority ("HHA"), from the lawsuit appellants had filed against them. Appellants contend that material questions of fact remain on the issues of whether Harrison was an actor in the termination of their employment, whether the HHA is a separate and independent agency with the authority to conduct its business independently of Harrison, and whether the HHA is entitled to charitable immunity from suit. We reverse and remand in part and reverse in part.
I. Facts and Procedural History
HHA is a municipal corporation created by Harrison pursuant to the Housing Authorities Act. See Ark. Code Ann. §§ 14-169-201 to 1108 (Repl. 1998) & (Supp. 2017). The HHA was created pursuant to a resolution passed by Harrison on July 28, 2011, to remedy "a shortage of safe or sanitary dwelling accommodations in the city available to persons of low income." According to the resolution that purported to create the HHA:
The HHA is created to act as an agent of the City of Harrison and shall have the powers and shall perform all of the functions set forth in A.C.A. Title 14-169-202 et seq. ("Act").
Harrison, Ark., Res. No. 1095 (July 28, 2011) (emphasis added.) According to the HHA's executive director ("ED"), the HHA was created:
[F]or the purpose of engaging in the leasing and administration of subsidized *346 housing programs. The [HHA] receives federal funding from the U.S. Department of Housing and Urban Development (HUD) and from the Arkansas Development Finance Authority (ADFA) under its HOME Program.
The HHA is composed of five commissioners (the "Board") and additional officers and personnel, including an ED, who are employed as necessary to accomplish the HHA's mission through its programs. Pursuant to the HHA's bylaws, termination authority rests with the ED.
The HHA is shown as a "department" of Harrison on Harrison's website and follows Harrison's personnel policies and schedule for closing its offices. Harrison processes the HHA's payroll, after which the HHA reimburses Harrison. The HHA receives its financing from HUD and ADFA to subsidize housing for persons with low income through its major program, the Section 8 Housing Choice Voucher Program. 42 U.S.C. § 1437f (2012).
The HHA's predecessor entity was the City of Harrison, Arkansas Housing Agency (the "Agency"). Unlike the Agency, the HHA is governed by its independent board ("Board"), rather than being a "component unit of the City of Harrison, Arkansas." The HHA undisputedly has more "powers and financing capabilities" than did the Agency.
Appellants Villines and Parker[1] worked for the HHA; however, they submitted their applications for employment to Harrison. Appellants were paid by checks drawn on Harrison's payroll account, and Harrison was shown as the "employer" on all W-2s issued to appellants during their employment with the HHA.
In December 2013, appellants reported to the Board their suspicions that the then ED, Derrick White, had misappropriated money and other assets of the HHA for his personal use. The Board confronted White, and he resigned in August 2014. Despite the Board's promoting Parker to interim executive director ("IED") of the HHA and increasing both her salary and Villines's, appellants allege that Board members warned them that they would be immediately terminated if they discussed White's resignation with anyone outside the HHA.
Harrison's mayor filed a complaint with Harrison's police department, which resulted in a criminal investigation of White's alleged thefts from the HHA. In December 2014, Villines and Parker were interviewed as a part of the investigation and gave written statements to the investigator.
Also in December 2014, the HHA Board hired Chonda Tapley as the new ED. The Board instructed appellants to train Tapley for the position, but allegedly they failed to do so. There were multiple reported incidents of misconduct and insubordination by appellants that allegedly occurred after Tapley's arrival at the HHA. As a result, Tapley required appellants to attend a customer-service seminar for remedial training. In January 2015, Tapley also disciplined appellants on three occasions each. She told appellants that they would be subject to discipline "up to termination" if they engaged in "deceitful or insubordinate" behavior.
It is undisputed that Tapley consulted four people before firing appellants, including a consultant who had previously worked with the HHA employees under the former ED. All four expressed to Tapley that she should fire appellants if they were not working as a team. After informing the Board of her decision to do so, *347 Tapley fired both appellants on February 27, 2015, in the presence of two or three members of the Board. According to Tapley, it was her decision to fire Villines and Parker.
Appellants filed for unemployment benefits, and it is undisputed that Harrison was shown as the "employer" on all documents issued regarding appellants' claims for benefits. Harrison indicated to the Arkansas Department of Workforce Services that appellants were fired for "continued behavior to the detrement [sic] of employer."
Appellants filed suit against the HHA and Harrison alleging that their (1) employment was wrongfully terminated under the Arkansas Whistle-Blower Act; (2) right to free speech was violated under the Arkansas Civil Rights Act; and (3) employment was terminated in violation of public policy.
The HHA and Harrison denied these allegations and filed multiple motions to dismiss and for summary judgment. Without reaching the substantive allegations of appellants' claims, in an order entered on October 7, 2016, the circuit court granted Harrison's motion to dismiss, finding that Harrison was not an actor in the termination of appellants from the HHA. The circuit court further found that the HHA is a separate and independent agency that has the authority to conduct its business independently of Harrison. In a subsequent order dated May 30, 2017, the circuit court granted the HHA's motion to dismiss and motion for summary judgment, finding that the HHA is entitled to charitable immunity from suit. Appellants filed a notice of appeal from both orders on June 21, 2017, and this appeal followed.
II. Standard of Review
Pursuant to Ark. R. Civ. P. 12(b) and (c) (2017), a motion to dismiss is converted to a motion for summary judgment when matters outside the pleadings are presented to, and not excluded by, the court. Heinrich v. Anders , 2017 Ark. App. 413, 528 S.W.3d 277. Because it is clear from the wording of the orders that the circuit court considered matters outside the pleadings, we review these motions as requests for summary judgment. Ordinarily, upon reviewing a court's decision on a summary-judgment motion, we examine the record to determine if genuine issues of material fact exist, but in cases that do not involve the question of whether factual issues exist but rather the application of legal doctrine, we simply determine whether appellee was entitled to judgment as a matter of law. See id.
The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Barnett v. Cleghorn , 2017 Ark. App. 641, 536 S.W.3d 147. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. Id. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. Id. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Id. Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. Id. The purpose of summary judgment is not to try issues, but to determine whether there are any issues to be tried. Id.
*348 III. Dismissal of Harrison
While it is undisputed that appellants worked for the HHA, every document in their respective personnel files identifies Harrison as their employer, including but not limited to: employment application; applicant information for record-keeping requirements; request from Harrison's mayor's office for criminal background search; personal data form for Harrison employee; receipt of Harrison's personnel handbook; receipt of Harrison's drug-free workplace policy; informed-consent and release-of-liability document for use with drug or alcohol testing; Arkansas Public Employees' Retirement System ("APERS") employee-enrollment request; notice to last employer; discharge general-employer statement with facsimile cover sheet from Harrison's mayor's office; notice of agency determination; UnitedHealthcare enrollment detail; Delta Dental eligibility maintenance; and APERS termination-of-employment-refund request. Additionally, paychecks issued to appellants came from Harrison's payroll account, and all W-2 forms issued to appellants showed Harrison as the "employer."
Appellants submit that Harrison and the HHA could and should have effected the separate legal existence envisioned by the Housing Authorities Act upon the HHA's creation, but the resolution of Harrison's city council, which created HHA, states in part: "The HHA is created to act as an agent of the City of Harrison...." (Emphasis added.)
Other evidence supporting appellants' argument that a material question of fact exists as to whether the HHA is a separate and independent agency with the authority to conduct its business independently of Harrison includes that (1) Harrison identifies the HHA as one of its "departments" on its website; (2) the affidavit of HHA's current ED Tapley, which was filed in support of Harrison's motion for summary judgment, fails to specifically identify appellants as employees of the HHA; (3) Harrison failed to produce a single document that identified the HHA as appellants' employer; (4) Harrison, as an allegedly separate and distinct entity, failed to produce any evidence, by affidavit or otherwise, that appellants were not its employees; and (5) Harrison's mayor initiated the criminal investigation against the HHA's former ED.
Appellants cite Draper v. ConAgra Foods, Inc. , 92 Ark. App. 220, 233, 212 S.W.3d 61, 69 (2005), noting that one indicator of an employer-employee relationship is that the parties themselves believed they were creating an employer-employee relationship. Harrison and the HHA claim that this argument was never made below and therefore is not properly preserved before this court. Found. Telecomms., Inc. v. Moe Studio, Inc. , 341 Ark. 231, 238, 16 S.W.3d 531, 536 (2000). We disagree and note that Harrison filed a motion for summary judgment asking the circuit court to dismiss it from the action because it was not appellants' employer. Appellants filed their response with forty-seven pages of supporting exhibits indicating that appellee Harrison had self-identified as their employer during their employment. We hold that the argument that appellants and Harrison believed they were creating an employment relationship was properly before the circuit court.
Appellants both submitted applications for employment to Harrison. Another indicator of an employer-employee relationship is that one party possesses the right to control the conduct of the other party. Wilhelm v. Parsons , 2016 Ark. App. 56, 481 S.W.3d 767 (stating that the ultimate question in whether an employer-employee relationship exists is not whether the employer actually exercises control *349 over the doing of the work, but whether it has the right to control).[2] Parker signed a memorandum issued on Harrison's mayor's letterhead to acknowledge she understood and accepted Harrison's policy on "racial and sexual sensitivity." Villines signed (1) a receipt for a personnel policy in which she acknowledged that Harrison could terminate her employment at any time without cause; (2) a receipt for a drug-free workplace policy that she was to keep for review during her employment with Harrison; and (3) an informed-consent and release-of-liability form that allowed Harrison to require her to submit to drug and alcohol testing. Appellants cite Dixon v. Salvation Army , 360 Ark. 309, 313, 201 S.W.3d 386, 388 (2005), for the proposition that an obvious indicator of an employer-employee relationship is when an individual employee renders labor or services to another for salary or wages. As previously noted, the final checks appellants received for their work at the HHA were drawn on Harrison's "payroll account."
We hold that Arkansas Louisiana Gas Co. v. City of Little Rock , 256 Ark. 112, 506 S.W.2d 555 (1974), is distinguishable, despite its holding that "the statutes demonstrate that the housing authorities are autonomous entities that have the power to act in every field related to their work independently of the cities." Ark. La. Gas Co. , 256 Ark. at 114, 506 S.W.2d at 557. There, the City of Little Rock passed two resolutions referring to the housing authority as its "agency," but the relevant statute made no mention of housing authorities as agents, later resolutions did not refer to the authority as an agent, and the relevant actions were taken by the authority and not the city. The same cannot be said of the HHA. We take issue with appellees' assertion that there is no genuine issue of material fact because the HHA's predecessor was an agency of Harrison and the HHA merely used documents and procedures it already had available. The evidence presented by appellees is simply not significant enough to prove, as a matter of law, the alleged distinction between the two entities.
Harrison failed to meet "proof with proof" that it was not appellants' employer. Yet, absent a discussion of what evidence was before it, the circuit court granted Harrison's motion and dismissed it from the suit. While it was possible, and even preferred pursuant to both statutory authority and caselaw, a significant amount of the evidence before the circuit court indicated that Harrison was identified in many aspects as appellants' employer. At best, there remain genuine issues of material fact as to whether the HHA was or is an "autonomous" and distinct entity, and whether Harrison was an actor in the termination of appellants' employment with the HHA. Because Harrison may be a viable party under Arkansas's recognized concept of "joint" employers, see Brotherton v. White River Area Agency on Aging , 93 Ark. App. 432, 220 S.W.3d 219 (2005), or pursuant to some other agency theory, we reverse and remand on this issue.
*350 IV. Dismissal of the HHA
Appellants alleged in their complaint that
Defendant Harrison Housing Authority ("HHA") is a body politic located in Boone County, Arkansas, created by the City of Harrison, Arkansas, pursuant to the Housing Authorities Act, Ark. Code Ann. 14-169-201, et seq. As such, it has the power to sue and to be sued.
Appellants suggest that the circuit court must have considered these facts as true and viewed them in a light most favorable to appellants because the circuit court found in its order dismissing Harrison that
the Harrison Housing Agency [sic] is a separate and independent agency that has the authority to conduct its business independently of the City.
And in its order dismissing the HHA, the circuit court stated:
The Court in that Order [dismissing Harrison] also found the Harrison Housing Authority, or Harrison Housing Agency, is a separate and independent agency with the authority to conduct public business and to sue and be sued independently of the City of Harrison.
Despite these findings, the circuit court dismissed the HHA on the basis of charitable immunity. Appellants argue that the dismissal of the HHA was incorrect. Appellants cite Progressive Eldercare Services-Saline, Inc. v. Cauffiel , 2016 Ark. App. 523, at 3, 508 S.W.3d 59, 62, for the proposition that "[t]he essence of the charitable-immunity doctrine is that entities created and maintained exclusively for charity may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the entity." Arkansas appellate courts have narrowly construed the doctrine, see Ouachita Wilderness Institute, Inc. v. Mergen , 329 Ark. 405, 947 S.W.2d 780 (1997). The eight factors considered when extending charitable immunity to a party are
(1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on contributions and donations for its existence; (7) whether the organization provides its service free of charge to those unable to pay; and (8) whether the directors and officers receive compensation.
Cauffiel , 2016 Ark. App. 523, at 3, 508 S.W.3d at 62. These factors are illustrative, not exhaustive, and no single factor is dispositive of charitable status. George v. Jefferson Hosp. Ass'n, Inc. , 337 Ark. 206, 987 S.W.2d 710 (1999). Whether the entity in question was created and is maintained exclusively for charitable purposes is the "recurring theme" in cases that examine the application of the doctrine. J.W. Resort, Inc. v. First Am. Nat'l Bank , 3 Ark. App. 290, 292, 625 S.W.2d 557, 558 (1981).
Appellees claim that appellants failed to make the argument below that the HHA is not entitled to charitable immunity based on the common-law doctrine of charitable immunity. They claim that appellants argued below only that charitable immunity is not a defense to a claim under the Arkansas Civil Rights Act, rather than that the HHA is not entitled to charitable immunity under the substantive law of the doctrine, or that the statutes regarding housing authorities do not define housing authorities as charitable entities. We disagree and note that appellees themselves asserted that the HHA had the power "to sue and to be sued" when they *351 argued that the HHA was autonomous from Harrison. The circuit court referred to this power in its order in the paragraph that immediately preceded its holding that the HHA was entitled to charitable immunity. We hold that appellants' argument was before the circuit court and is properly preserved for our review.
The HHA had the burden of proving it was entitled to this defense, see Downing v. Lawrence Hall Nursing Ctr. , 2010 Ark. 175, 369 S.W.3d 8, and it failed to do so. The HHA produced no evidence before the circuit court to show that it was created exclusively for charitable purposes. The Act that authorizes housing authorities, the Housing Authorities Act, Ark. Code Ann. §§ 14-169-201 to 1108, comprises forty sections-none of which contains the word "charitable" or any of its variants. Likewise, the resolution enacted by Harrison in creating the HHA does not contain the word "charitable." It refers to the HHA as a "municipal corporation" and links its purpose to "residential construction" and "general economic activity."
The sole indication that the HHA submitted to support its claim to charitable immunity was an affidavit from current ED Tapley that was attached to the HHA's second supplement to its motion to dismiss appellants' second amended complaint:
The Harrison Housing Authority exists exclusively for a charitable purpose which is, simply put, to provide housing assistance to persons in need. The Housing Authority does not and has not carried any policy of insurance, liability or otherwise, which would insure the Housing Authority for the claims made by the Plaintiffs in the Second Amended Complaint in the case of Villines et al. v. City of Harrison et al., Boone County Circuit Court.
Yet earlier, before HHA raised the defense of charitable immunity, Tapley stated:
The Harrison Housing Authority (Authority) was created for the purpose of engaging in the leasing and administration of subsidized housing programs. The Authority receives federal funding from the U.S. Department of Housing and Urban Development (HUD) and from the Arkansas Development Finance Authority (ADFA) under its HOME Program. The Authority's major program is the Section 8 Housing Choice Voucher Program.
....
A housing authority is created, under the Arkansas Housing Authorities Act, as "a public body corporate and politic...." A.C.A. § 14-169-207 (1987). Arkansas Code Annotated § 14-169-211 (1987) states that "[a] housing authority shall constitute a public body corporate and politic, exercising exclusively public and essential governmental functions...."
We discount appellees' reliance on the unpublished opinion of Bridget v. West Helena Housing Authority and Centerpoint Energy , No 2:06CV00161-WRW, 2006 WL 3313674 (E.D. Ark. Nov. 14, 2006), in which there was no analysis of the Helena Housing Authority's entitlement to the affirmative defense of charitable immunity under the factors developed by Arkansas jurisprudence. The circuit court's sole rationale for dismissing the HHA in this action appears to be its reliance on Bridget .
The Housing Authorities Act gives housing authorities the power to sue and to be sued. Ark. Code Ann. § 14-169-211(1). Interestingly, the circuit court recognized this power of housing authorities when it explained its dismissal of Harrison as a party; then it dismissed HHA because of *352 charitable immunity. We hold that nothing in the Act can be construed as extending the doctrine of charitable immunity to housing authorities, and we further note that logic would be offended by a legal entity simultaneously having the power "to be sued" and yet be afforded the protection of charitable immunity.
Although the HHA claims that the charitable-immunity issue was essentially decided by Hogue v. Housing Authority of North Little Rock , 201 Ark. 263, 144 S.W.2d 49 (1940), Hogue did not extend the doctrine of charitable immunity to housing authorities. Rather, it held, inter alia , that the property of the Housing Authority of North Little Rock was exempt from taxation under article XVI, section 6 of the Constitution of 1874 because it was public property used exclusively for public purposes, and its buildings and grounds and materials were used exclusively for public charity.
We note that the Arkansas Whistle-Blower Act, a violation of which is part of appellants' lawsuit against Harrison and the HHA, logically does not allow for a charitable-immunity defense. If any public employer whose assets are exempt from taxation were allowed to claim charitable immunity from suit under the Arkansas Whistle-Blower Act, then the Act would become meaningless.
Because the HHA failed as a matter of law to present sufficient evidence to meet its burden of proof regarding the applicability of the charitable-immunity defense, we reverse the circuit court's dismissal of the HHA on that basis.
V. Appellees' Justification Argument
Finally, we note that appellees devote an entire section of their argument to the idea that this court should affirm the circuit court because "Appellants ['] Terminations were lawful." Appellees discuss the evidence that supports their substantive defenses. Although appellees submit that this general discussion of the evidence is properly before this court because we can "affirm the judgment of the circuit court if that court's result-herein the judgments dismissing appellees-was right for any reason, even if it did not rely on the reason this court finds relevant," we disagree.
Before an appellate court can "go to the record" to affirm a circuit court's decision, the circuit court must have rendered a decision on the issue at hand. Our supreme court stated in TEMCO Construction, LLC v. Gann , 2013 Ark. 202, at 12-13, 427 S.W.3d 651, 659 :
This court decides if the trial court erred in reaching a decision. This court does not make the decision. Long ago in Stroud v. Crow , 209 Ark. 820, 192 S.W.2d 548 (1946), we similarly stated: Furthermore, this is a court of appellate jurisdiction, and we do not decide issues not directly or indirectly presented in or decided by the trial court. "The constitution vests in this court only appellate and supervisory jurisdiction, and not original jurisdiction, in controversies between individuals." May v. Ausley , 103 Ark. 306, 146 S.W. 139 [ (1912) ] [.]
Here, the circuit court declined to rule on any other defense raised by appellees after it decided to dismiss the case against Harrison by a previous order and subsequently the HHA on the basis of its charitable immunity. Accordingly, the issues raised by appellees in section IV of their argument are not properly before this court for review.
Reversed and remanded in part; reversed in part.
Virden and Vaught, JJ., agree.

Appellant Parker originally was hired by the Agency in 2005.

Appellees maintain that appellants' argument that Harrison possessed the right to control the conduct of appellants was not made below and is not properly preserved. We disagree. It is undisputed that the circuit court had before it a letter from the mayor of Harrison to "All City Department Heads and Subordinate Staff" that threatened dismissal for any employee who did not accept people of diverse racial backgrounds or sexual orientation. Parker signed that letter as "Employee." Also, the circuit court had before it an informed consent signed by Villines that allowed Harrison to require her to undergo random tests for alcohol or drug use. Accordingly, the argument was raised before the circuit court.